Kenneth R. HILLIARD and Gregory D. Styles, Trustee under Trust Agreement dated May 5, 1979, Plaintiffs,

v.

SHELL WESTERN E & P, INC., a Delaware corporation, Defendant.

No. 5:93–CV–21.

United States District Court, W.D. Michigan, Southern Division.

May 4, 1995.

Dale W. Rhoades, Kurt D. Hassberger, Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, MI, Philip R. Rosi, John W. Tilley, Rosi, Senger & Harrison, P.C., Traverse City, MI, for plaintiffs.

Webb A. Smith, Scott A. Storey, Foster, Swift, Collins & Smith, P.C., Lansing, MI, for defendant.

## *OPINION*

QUIST, District Judge.

This case was originally filed in state court and was removed to this Court because Count V tries to allege a claim for violation of subsection 1962(b) of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(b), over which this Court would have jurisdiction pursuant to 18 U.S.C. § 1964(c). The plaintiffs have been certified as a class of holders of royalty interests as lessors of mineral rights leased to defendant Shell Western E & P, Inc. (Shell). Plaintiffs claim that Shell has wrongfully deducted from their royalty payments a 1% pro rata share of the regulatory fee imposed by Act 61 of the Michigan Public Acts of 1939, as amended. M.C.L.A. § 319.1 *et seq.,* M.S.A. § 13.139 (Act 61).

Previously, this Court held that the deduction of the Act 61 privilege fee from the royalty payments was a breach of contract. This Court also held, on the basis of the record before it at that time, that the res judicata defense of Shell was not ripe, and was, therefore, denied. This Court also held that, unlike subsection 1962(c) of RICO, subsection 1962(b) does not require a "person" that is separate and distinct from the "enterprise". However, this Court said in its earlier Opinion, "This is not to say that the plaintiff has stated or can prove a RICO violation."

Shell has now filed new motions for summary judgment based upon the doctrine of res judicata and for failure of Count V to state a claim under RICO subsection 1962(b). Plaintiffs previously moved to strike Shell's collateral estoppel/res judicata defenses. Plaintiffs' motion was denied without prejudice but will be addressed in this Opinion.

The facts upon which this decision rests are more fully set forth in this Court's Opinion of November 2, 1993.

## *STANDARDS FOR DECISION*

The summary judgment standards on the res judicata issue are also set forth in the Opinion of November 2, 1993.

The RICO action may be dismissed if Count V fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. All factual allegations in the complaint must be presumed to be true and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice,* ¶ 12.07[2.5] (2d ed. 1991). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Dismissal is also proper if the complaint fails to allege an element necessary for relief or "if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as the official immunity of the defendant...." 2A James W. Moore, *Moore's Federal Practice,* ¶ 12.07[2.5] (2d ed. 1991).

## *RES JUDICATA*

Shell claims that the decision and settlement of the prior actions of *Brown v. Shell,* No. 81–885 8–CK in the Grand Traverse County Circuit Court, and *Black v. Shell,* No. G82–833CA(7) [1], in the Western District of Michigan bar, by the doctrine of res judicata (more recently called, claim preclusion), plaintiff's current claims for wrongful deduction of the Act 61 privilege fee. Shell, in the first instance, contends that the plaintiffs' suit in *Brown* "constituted an all encompassing challenge to Shell's calculation of royalty payments and included the claim that inappropriate deductions were made from royalty checks." Shell Res Judicata Brief at 4. This statement is not correct as to the deductions of the Act 61 privilege fee which is the subject of the instant case. The record in *Brown* does contain a reference to the Act 61 privilege fee in plaintiffs' brief in opposition to Shell's motion to dismiss the severance tax aspect of *Brown,* but that reference is in the context of explaining the Act 48 severance tax. The Michigan Court of Appeals certainly did not rule on the deductibility of the Act 61 privilege fee from the royalties. *Brown v. Shell Oil Co.,* 128 Mich.

---

1. The *Black* case was voluntarily dismissed.

App. 111, 339 N.W.2d 709 (1983), *appeal denied,* 424 Mich. 867 (1986), *cert. denied,* 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986). The record, taken in the light most favorable to Shell, simply does not support any reasonable conclusion that the parties in *Brown,* that is Shell and the class members in *Brown,* or the plaintiffs' attorneys, were considering the Act 61 privilege fee when *Brown* was being litigated.

To the contrary, the record in *Brown* supports the position that the deduction of Act 61 privilege fee was not being litigated in *Brown. Brown* had two aspects—a litigation to conclusion aspect and a settlement aspect. The deductibility by Shell of the Act 48 severance taxes was litigated to conclusion. As stated, there is no court decision on the deductibility of the Act 61 privilege fee. The plaintiffs' other claims against Shell in *Brown* and *Black* were settled. The notice to the *Brown* class members of the terms of the settlement set forth the plaintiffs' claims as follows:

A. Plaintiffs claim royalty owners are entitled to be paid royalties based upon the value of products which are manufactured at the Kalkaska Gas Plant and are attributable to their lease. Alternatively, plaintiffs claim that the difference between the total value of those plant products and the value actually credited to the lease is excessive.

B. Plaintiffs claim Shell is not authorized to deduct from royalties costs for dehydration, compression, and sour-gas treatment.

C. Plaintiffs claim Shell is not authorized to withhold from royalty payments amounts necessary to pay a pro-rata share of the Michigan Oil and Gas Severance Tax. Plaintiffs' severance tax claims are not affected by the settlement agreement explained below.

D. Plaintiffs claim Shell breached the oil and gas leases and they should be canceled.

On the issue of whether the court decision in *Brown* resolved the deductibility of the Act 61 privilege fee, it is important that in paragraph C of this notice the parties, which prepared the notice, and the court, which approved of the notice specifically mention the severance tax, which was part of the litigated aspect of the case, *and only the severance tax,* as not being part of the settlement. Thereby, the parties agreed that the Act 61 privilege fee was *not* part of the *Brown litigation* over the deductibility of the Act 48 severance taxes.

Nor is the deductibility of the Act 61 privilege fee part of the settlement. The Act 61 privilege fee is not mentioned in the pleadings, settlement documents or notice to the class members. The specific mention of the items that were settled without mentioning the Act 61 privilege fee shows that the Act 61 privilege fee was not settled. In fact, plaintiffs' attorneys still contend that they did not even know that the Act 61 privilege fees were being deducted when *Brown* was settled.

■ If Shell is to succeed in its res judicata argument, it must do so by application of Michigan's "broad rule" to the facts of this case. As this Court pointed out in its prior Opinion, under Michigan law the doctrine of res judicata is used "to bar both claims actually litigated by parties in prior actions and claims that could have been, but were not litigated." *City Communications, Inc. v. City of Detroit,* 888 F.2d 1081, 1089 (6th Cir.1989). There is no Michigan decision of which either party or the Court is aware which holds that Michigan's broad res judicata rule applies or does not apply in a class action situation.

■ This Court concludes that Michigan's broad rule should not be applied in the context of a class action such as the action now before this Court. This Court agrees that Michigan's broad rule is generally a good rule for the orderly resolution of disputes between parties. However, where class actions are involved, this Court believes that protection of the class members should override the finality that Michigan's broad rule would afford. Both the state and federal rules for class actions provide a range of protections for the class members. For example, the class representatives must fairly and adequately protect the interests of the class. The class members in *Brown* were

given notice of the nature of the claim being asserted on their behalf. They were also given notice of the terms of the settlement. No notice to the class members informed them that their claims for wrongful deduction of the Act 61 privilege fee were at issue in the litigation or were being settled. An individual class member could well have objected to the proposed settlement if the member knew that a claim for wrongful deduction of the Act 61 privilege fee was being settled. If there had been such an objection, perhaps the state circuit judge, in performing his duty to the class, would not have approved the settlement. Certainly, (in hindsight) the class representatives would not have been adequate representatives of the class if they unknowingly disposed of Act 61 privilege fee claims. In short, this Court believes that a class action settlement should not bar all claims that could have been litigated between the parties but only those claims that were actually litigated. Otherwise, the notices, representatives and courts upon which individual class members rightfully rely would be meaningless.

For these reasons, Shell's motion for summary judgment on the grounds of res judicata will be denied. For these same reasons, plaintiffs' motion to strike Shell's collateral estoppel/res judicata affirmative defenses will be granted.

### RICO

█ In order to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1964(c), a plaintiff must allege (1) an injury to plaintiff's business or property as a result of (2) defendant's violation of one or more provisions of 18 U.S.C. § 1962. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985). Section 1962 has four subsections—§ 1962(a)–(d). 18 U.S.C. § 1962(a), prohibits any person from using investment income derived from a pattern of racketeering activity in any interstate enterprise. 18 U.S.C. § 1962(b), the subsection upon which plaintiffs are relying in the instant case, states as follows:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(c), makes it unlawful for "any person employed by or associated with" an interstate "enterprise" to conduct the affairs of the enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(d), makes it unlawful to conspire to violate the previous subsections of § 1962. As "chapter headings," § 1962(a) may be called the "investment" section; § 1962(b) may be called the "acquisition or control" section; § 1962(c) may be called the "conducting" section; and § 1962(d) may be called the "conspiracy" section.

Because the plaintiffs rely upon § 1962(b) in an attempt to state a RICO claim in this case, this Court will analyze the pleading elements of that particular subsection. This Court believes that one of the clearest descriptions of the requirements of § 1962(b) is found in *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1190 (3d Cir.1993):

In order to recover under this section, a plaintiff must show injury from the defendant's acquisition or control of an interest in a RICO enterprise, *in addition* to injury from the predicate acts. "Such an injury may be shown, for example, where the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise." In addition, the plaintiff must establish that the interest or control of the RICO enterprise by the person is as a result of racketeering. It is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise. Rather, it must be established firmly that there is a nexus between the interest and the alleged racketeering activities.

4 F.3d at 1190 (citations omitted) (emphasis added). In *Lightning Lube,* the United States Court of Appeals for the Third Circuit affirmed the district court's dismissal of the § 1962(b) claim because the plaintiff failed to

allege how the "acquisition of interest" and "control" of the enterprise by defendant injured plaintiff:

> As stated above, a well-pled complaint under section 1962(b), just as with section 1962(a), requires the assertion of an injury independent from that caused by the pattern of racketeering. Here, Lightning Lube alleges in terms of a section 1962(b) injury that the employees of Witco are engaged in a pattern of racketeering. RICO Case Statement at 73. Such an allegation clearly is insufficient because it merely parrots the same injury that section 1962(c) is meant to remedy and fails to explain what additional injury resulted from the person's interest or control of the enterprise.

*Id.* at 1191. The classic example of a § 1962(b) injury is where the owner of a legitimate business is injured by infiltration of the business by racketeering activity such as loan sharking or extortion. *F/V Robins Nest, Inc. v. Atlantic Marine Diesel, Inc.,* No. 92–3900, 1994 WL 594592, (D.N.J. Oct. 14, 1994). Several other cases describe the independent injury requirement of § 1962(b). *E.g., Danielsen v. Burnside–Ott Aviation Training Center Inc.,* 941 F.2d 1220, 1231 (D.C.Cir.1991); *Banks v. Wolk,* 918 F.2d 418 (3rd Cir.1990); *Greenberg v. Tomlin,* 816 F.Supp. 1039 (E.D.Pa.1993).

■ In this particular case, the plaintiffs allege that Shell engaged in a series of predicate acts of mail fraud by mailing royalty checks and other documents to plaintiffs without ever disclosing to plaintiffs that defendants were deducting the Act 61 privilege fee. Thus, plaintiffs do not allege that Shell's mail fraud caused Shell to gain or maintain control of an enterprise to plaintiffs' injury. If plaintiffs had made such allegations, they would not make sense. For example, as stated in *Brown v. Siegel,* No. 94–1829, 1995 WL 66860, at *4 (E.D.Pa. Feb. 13, 1995):

> [I]t is also counter intuitive to assert that an enterprise ... could gain or maintain control of itself through a pattern of racketeering activity.

Plaintiffs simply claim that the allegedly fraudulent scheme itself caused them injury.

In fact, at oral argument, plaintiffs conceded that they have not alleged an injury arising from acquiring or maintaining control which is separate and distinct from the alleged predicate acts. They point out, however, that RICO must be liberally construed. Pub.L. 91–452, § 904(a), 84 Stat. 922, 947 (1970); *Sedima,* 473 U.S. at 498, 105 S.Ct. at 3286. Plaintiffs then argue that because the predicate acts are mail fraud and Congress did not create a private remedy for mail fraud, this Court should imply that RICO created a private remedy for mail fraud.

■ As defendant points out, there are adequate remedies for fraud in state common law. Furthermore, there is a significant difference between construing a statute liberally and legislating from the bench. As the Supreme Court said in *Reves v. Ernst & Young,* —— U.S. ——, ——, 113 S.Ct. 1163, 1172, 122 L.Ed.2d 525 (1993), the liberal construction provision of RICO

> is not an invitation to apply RICO to new purposes that Congress never intended. Nor does the clause help us to determine what purposes Congress had in mind. Those must be gleaned from the statute through the normal means of interpretation.

If Congress had wished to create a private remedy for mail fraud, it could have done so. The RICO statute, however, is not intended to create federal, private remedies for everything that Congress has made a federal crime. Rather, § 1964(c) of RICO only provides a private right of action against those who commit any of the activities prohibited in § 1962.

Plaintiffs have not stated a claim under 18 U.S.C. § 1964(c). Therefore, defendant's motion to dismiss Count V of the Complaint will be granted, and plaintiffs' RICO claim will be dismissed.

A separate Order consistent with this Opinion will be entered.

### ORDER

In accordance with Opinion issued on this date,

**IT IS HEREBY ORDERED** that plaintiffs' Motion to strike affirmative defenses of collateral estoppel/res judicata (docket no. 59) is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant's Motion for summary judgment on the grounds of res judicata (docket no. 74) is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's Motion for partial summary judgment to dismiss count V of the complaint (docket no. 75) is **GRANTED** as to the RICO claim and plaintiffs' RICO claim is **DISMISSED.**

**IT IS FURTHER ORDERED** that defendant's motion to dismiss de minimis claims (docket no. 76) is now moot pursuant to the Order docketed as number 91.