**ENVIRONMENTAL ASSOCIATION OF ST. THOMAS
and ST. JOHN, WERNER WERNICKE,
PATRICIA SHAPLEY, JOHN SHAPLEY, CHARLES
HAMILTON, and HUBERT BRUMANT, Plaintiffs**

v.

**THE DEPARTMENT OF PLANNING AND NATURAL RESOURCES,
BOTANY BAY PARTNERSHIP, LLP, THE HONORABLE CHARLES
WESLEY TURNBULL, GOVERNOR OF THE VIRGIN ISLANDS,
THE TWENTY-FOURTH LEGISLATURE OF THE VIRGIN ISLANDS,
THE DEPARTMENT OF PUBLIC WORKS, and
ST. THOMAS COMMITTEE OF THE VIRGIN ISLANDS
COASTAL ZONE COMMISSION, Defendants**

Civil No. 680/2001

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

April 10, 2002

GWENDOLYN R. WILDS, ESQ., St. Thomas, V.I., *Attorney For Plaintiffs*

CAROL THOMAS-JACOBS, ESQ., DENISE GEORGE-COUNTS, ESQ., Assistant Attorneys General, V.I. Department of Justice, St. Thomas, V.I., *Attorneys for the Government*

YVONNE L. THARPES, ESQ., Office of Legislative Counsel, St. Thomas, V.I., *Attorney For Legislature*

HENRY L. FEUERZEIG, ESQ., SIMONE R.D. FRANCIS, ESQ., Dudley, Topper & Feuerzeig, LLP, St. Thomas, V.I., *Attorneys for Botany Bay Partnership, LLP*

HOLLAR, *Judge*

## MEMORANDUM OPINION

(April 10, 2002)

This matter came before the Court on December 28, 2001, on plaintiffs' motion to amend their complaint in order to delete Adelle Jowers, Jay Jowers, Georgeann McNicholas, and James McNicholas as plaintiffs and add Charles Hamilton as a plaintiff, and to clarify their causes of action as well as the ad damnum clause. Defendant Botany Bay

Partnership LLP ("Botany Bay") filed an opposition to the plaintiffs' motion on January 9, 2002, and moved for both a dismissal of the amended complaint and an expedited hearing. Additionally, the executive agencies, Legislature, and the Governor, as co-defendants, moved the Court to dismiss this action. For the reasons that follow, the plaintiffs are authorized, without leave of Court, to file an amended complaint; however, the defendants' motions to dismiss shall be granted.

## I. FACTS AND PROCEDURAL HISTORY

The Twenty-Fourth Legislature of the Virgin Islands passed Bill No. 24-0199 ("The Bill") on December 8, 2001. The Governor signed the Bill into law on December 28, 2001. The Bill changed the zoning designation of Parcels Nos. 2-1-41, 2-1-42, and 3-3-41 Estate Botany Bay, No. 7 West End Quarter, St. Thomas, Virgin Islands ("the parcels") from R-1 (Residential Low Density) to R-3 (Residential Medium Density).

The Bill originated as a result of a petition from Botany Bay Partners, LLP ("Botany Bay") to the Legislature on September 7, 2001 for rezoning of the parcels in question. The Department of Planning and Natural Resources ("DPNR") and the Legislature conducted *public hearings* on the proposed rezoning on November 23, and December 6, 2001, respectively. While DPNR recommended against rezoning, it nevertheless favored a variance with conditions permitting expanded use. The recommendation by DPNR was ignored by the Legislature and Bill No. 24-0199 was passed on December 11, 2001, rezoning the parcels and appropriating funds necessary for expanding water treatment in the Estate Botany Bay area. On December 17, 2001, the Legislature transmitted the Bill to the Governor. On December 18, 2001, the Plaintiffs filed this action for a temporary restraining order, preliminary and permanent injunction. The request for a temporary restraining order was denied on December 20, 2001. A motion to dismiss the case was filed by defendant Botany Bay on December 24, 2001. Motions to dismiss the complaint were also filed on December 27, 2001, by defendants DPNR, the Honorable Charles W. Turnbull ("Governor"), the Department of Public Works ("DPW"), the St. Thomas Committee of the Virgin Islands Coastal Zone ("CZM") (collectively referred to as "Government"), and the Legislature.

222

Trial on plaintiffs' application for a preliminary and permanent injunction was scheduled for December 27, 2001 by the initial judge in this matter. Before the hearing on the merits began, counsel for the plaintiffs requested the initial judge to recuse himself. Without ruling on any outstanding motions and before recusing himself, deadlines were issued for certain motion practice to be completed, including amendment of the complaint, as moved for orally during the December 27, 2001 hearing. The case was then reassigned to the undersigned. Next, on December 28, 2001, the plaintiffs filed a motion to amend the complaint, with proposed amended complaint, asking the Court to declare the Bill unconstitutional and void, and to enjoin DPW, CZM, and Botany Bay from taking any action based upon the Bill. Later that same day, the Governor signed Bill No. 24-0199 into law. On January 2, 2002, this Court ordered the plaintiffs to advise the Court whether the actual passage of the Bill had any impact on the action. Botany Bay, on January 9, 2002, filed a motion to dismiss the plaintiffs' amended complaint. Improvidently, the Court issued a show cause order directed to the defendants on January 16, 2002 for failure to respond to the Court's January 9, 2002 Order. Eight days later, the Legislature filed an amended motion to dismiss. On January 24, 2002, the Executive Branch of the Government renewed its motion to dismiss. On February 22, 2002, the plaintiffs, without leave of Court being granted, filed an inclusive response to the defendants' respective motions to dismiss, which: (1) asserted that they had standing to bring their cause of action; (2) asserted that the matter was ripe for adjudication; (3) reaffirmed their initial claims of due process and equal protection violations; (4) contested the immunity claimed by the Legislature; and (5) contested the legality of Act No. 6484 by alleging for the first time that the defendant, Botany Bay, illegally subdivided, partitioned and recorded the parcels which were later rezoned. Finally, on March 12, 2002, the Government submitted a reply in support of its motion to dismiss, raising issues that: (1) the Environmental Association of St. Thomas and St. John ("EAST") lacks standing to bring this claim; and (2) the individual plaintiffs also lack standing based on their failure to: cite a statutory conferral of standing; make their objections to the proposed rezoning known at public hearings; and/or articulate a definite harm to their interests that would confer standing upon them.

## II. APPLICABLE STANDARD FOR DISMISSAL

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). All reasonable inferences, drawn from the allegations in the complaint, must be accepted as true. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). The Court is not "required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

In a proper complaint, a plaintiff must "set forth sufficient information to outline the elements of [the] claim or to permit inferences to be drawn that those elements exist." *Id., see also* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34 [4][a] (3rd Ed. 1999) (stating that dismissal under Rule 12(b) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief); *Alexander v. Continental Motor Works, Inc.*, 933 F. Supp. 715, 717 (N.D. Ill. 1996); *Hilliard v. Shell Western E & P., Inc.*, 885 F. Supp. 169, 171 (W.D. Mich. 1995); *O'Hern v. Delta Airlines, Inc.*, 838 F. Supp. 1264, 1265 (N.D. Ill. 1993). When ruling on the motion to dismiss for failure to state a claim upon which relief may be granted, courts may consider undisputed documents relied upon by the claimant even if such documents are not attached to claimant's pleading. *Government Fund of the Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 449 (D.V.I. 1997). When the motion raises only an issue of law, the Court has no discretion as to whether to dismiss a complaint if it is determined that the complaint is formally insufficient. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d Ed. 1990).

## III. DISCUSSION

The issues brought before this Court for resolution are: (1) whether plaintiffs must obtain leave of Court to amend their complaint when no responsive pleading has been served; (2) whether EAST has standing to bring this action if it can not establish "injury in fact" or a substantial personal stake in the outcome of the litigation; (3) whether the private landowner plaintiffs have standing to bring this action despite their failure to appear, object or go on record at public hearings; (4) whether a

private party is subject to a constitutional infringement claim if the action taken by the private party has no nexus to state action; (5) whether the Legislature is immune from suit by the plaintiffs; (6) whether the Governmental entities have violated plaintiffs' Fifth Amendment Due Process guarantees; (7) whether the plaintiffs' claim against the Governmental entities, based upon an equal protection violation, should be dismissed for failure to identify any disparate treatment; (8) whether any sanctions are warranted against the defendants' counsel; and (9) whether manifest deficiencies in the plaintiffs' amended cause of action remain despite consideration given to pleaded issues argued in plaintiffs' reply to the defendants' respective motions to dismiss.

While other issues have been raised in this matter, the disposition of the above listed issues renders the unaddressed issues moot.

## A. The Plaintiffs May Amend Their Complaint Without Leave Of Court When No Responsive Pleading Has Been Served.

 FED. R. CIV. P. 15(a) provides that "a party may amend [its] pleading once as a matter of course at any time before a responsive pleading is served." Although all defendants have filed a motion to dismiss the plaintiffs' complaint, none have filed a responsive pleadings. *See Fortner v. Thomas*, 983 F.2d 1024, 1032 (11th Cir. 1993) (motion to dismiss *is not* a responsive pleading) (emphasis added); *Rodgers v. IBEC Housing Co., V.I., Inc.*, 12 V.I. 166 (D.V.I. 1975). Since no responsive pleading has been filed, no leave of court is required before an amended complaint is served. Accordingly, plaintiffs' amended complaint shall be accepted with all the requested revisions.

## B. The Injuries alleged by EAST are Insufficient To Confer Standing Upon It.

The Government asserts in its reply in support of its motion to dismiss that neither EAST nor its individual members have standing to raise substantive due process[1] and equal protection claims contesting the rezoning of the parcels in question.

---

[1] Substantive due process may be broadly defined as the constitutional guaranty that no person shall be arbitrarily deprived of his life, liberty, or property. The essence of substantive due process is protection from arbitrary and unreasonable action. *Poe v. Ullman*, 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961); *Galvan v. Press*, 347 U.S. 522, 74 S. Ct. 737, 98 L. Ed. 911 (1954).

EAST contends it has standing because: (1) it has suffered injury in fact as a result of the zoning amendment; (2) a controlling statutory conferral exists; and (3) its members appeared at public hearings held by DPNR and voiced opposition to the proposed rezoning.

■ The standard for "standing" based upon "injury in fact" has been set forth by the Supreme Court as follows:

> A plaintiff must meet three requirements in order to establish Article III standing. *See, e.g., Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-181, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). First, he must demonstrate "injury in fact"—a harm that is both "concrete" and "actual or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990) (internal quotation marks and citation omitted). Second, he must establish causation—a "fairly ... trace[able]" connection between the alleged injury in fact and the alleged conduct of the defendant. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976). And third, he must demonstrate redressability—a "substantial likelihood" that the requested relief will remedy the alleged injury in fact. *Id.*, at 45, 96 S. Ct. 1917. These requirements together constitute the "irreducible constitutional minimum" of standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), which is an "essential and unchanging part" of Article III's case-or-controversy requirement, *ibid.*, and a key factor in dividing the power of government between the courts and the two political branches, *see id.*, at 559-560, 112 S. Ct. 2130.

*Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S. Ct. 1858, 1861-1862, 146 L. Ed. 2d 836 (2000). On the same issue of "standing", the Supreme Court has also held:

> Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue. Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a 'personal stake in the

outcome of the controversy,' *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L. Ed. 2d 663, as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' *Flast v. Cohen*, 392 U.S. 83, 101, 88 S. Ct. 1942, 1953, 20 L. Ed. 2d 947.

*Sierra Club v. Morton*,[2] 405 U.S. 727, 731-732, 92 S. Ct. 1361, 1364, 31 L. Ed. 2d 636 (1972), *see also Lujan v. National Wildlife Federation*,[3] 497 U.S. 871, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1990) (To have standing to sue, plaintiff must establish: (1) that he has suffered an "injury in fact" that is concrete and particularized rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the conduct complained of that is traceable to the challenged conduct; and (3) that the injury will "likely" be redressed by a favorable decision).

■ EAST cites a series of authorities (contained in footnote 4 *sub judice*) to support the contention that it has standing. Reliance, however, upon those authorities is misplaced because those cases involve persons or organizations that could claim concrete, actual, imminent harm and/or pecuniary and substantial interest in the subject matter of the litigation.[4]

---

[2] The Supreme Court found Sierra Club's allegation that it had a "special interest in the conservation and the sound maintenance of the national parks, game refuges, and the forests of the country" insufficient for standing purposes because Sierra Club failed to establish any link between its members and the area.

[3] The holding in *Lujan v. National Wildlife Federation* is neatly summed up by Erwin Chemerinsky in FEDERAL JURISDICTION (3rd Ed. 1999), § 2.3, detailing as follows:

Two members of the National Wildlife Federation submitted affidavits that they used land "in the vicinity" of that which was reclassified (to allow for mining), and that the increased mining activity would destroy the area's natural beauty. The Supreme Court, however, said that this allegation was too general to establish a particular injury and thus the defendant was entitled to prevail on summary judgment because of the plaintiff's lack of standing.

[4] *Orie v. Zoning Board of Beaver*, 767 A.2d 623 (Pa. Cmmw. 2001) (*Adjoining landowners* appealed zoning variance granted to library by zoning hearing board), *Gate Side Queensgate Company v. Delaware Petroleum Company*, 134 Pa. Commw. 603, 580 A.2d 443 (Pa. Cmmw. 1990) (Involving a *neighboring property owner* appealing from zoning board's granting of variance); *Hager v. Zoning Hearing Board of W. Goshen Township*, 23 Pa. Commw. 361, 352 A.2d 248 (Pa. Cmmw. 1976) (Held that persons opposing a variance in land use, *one of whom*

Not one of the cases stands for the proposition that persons who or organizations that merely participate in rezoning public hearings by presenting objections automatically have standing to judicially challenge an adverse decision. Moreover, EAST fails to assert any direct or pecuniary interest as a result of the rezoning of the parcels owned by Botany Bay.[5]

■ Even if EAST could establish an actual, pecuniary or substantial interest in the rezoning of the subject parcels by invoking the Open Shoreline Act[6] which guarantees the public individually and collectively

*owned adjacent property*, were persons affected by the variance and were therefore "parties" who properly appealed directly to the Common Pleas Court the zoning board's action granting the variance); *Cablevision—Division of Sommons Communications Inc. v. Zoning Hearing Board of Easton*, 13 Pa. Commw. 232, 320 A.2d 388 (Pa. Cmmw. 1974) (Held that a person *who owns property contiguous to land* which is the subject of a zoning decision, but outside the territory of the municipality in which the subject property is situated, is not an aggrieved person entitled to perfect an appeal from such a decision); *Esso Standard Oil Co. v. Taylor*, 399 Pa. 324, 159 A.2d 692 (Pa. Cmmw. 1960) (*Owners of property in immediate vicinity* of property for which a variance was sought had the requisite interest and status to become intervenors in certain landowners' appeal from denial of a variance) and *Grant v. Zoning Board of Penn Township*, 776 A.2d 356, 359 (Pa. Cmmw. 2001) (Where *landowners* appealed the decision of township zoning hearing board granting special exception for construction of electric generating facility).

[5] While ¶42 of the Amended Complaint alleges substantial pecuniary damage from the diminution in value to Plaintiffs' property, it is clear that this refers only to the individual plaintiffs who maintain property ownership in the area and not to EAST, who does not allege land ownership in the vicinity of Botany Bay.

[6] Title 12 V.I.C. § 401 states the policy of the Act found in 12 V.I.C. Chapter 10:

The sea has long dominated the history of the United States Virgin Islands. It has, until the advent of the air age, been the only route to the outside. The sea has brought to these islands all of the seven flags that have reigned over them. It has also been a constant source of food and recreation. The threshold to the sea that surrounds us is the shoreline. The shorelines of the United States Virgin Islands have in the past been used freely by all residents and visitors alike. The seashore has been a place of recreation, of meditation, of physical therapy and of rest to Virgin Islanders past and present. To fishermen the sea and its shores are a way of life. The second half of the twentieth century has brought adverse changes to the United States Virgin Islands shorelines. There has been uncontrolled and uncoordinated development of this area, together with attempts, sometimes successful, to curtail the use of these areas by the public. The Legislature recognizes that the public has made frequent, uninterrupted and unobstructed use of the shorelines of the United States Virgin Islands throughout Danish rule and

228

the right to use and enjoy any shoreline in the Territory, the Chemerinsky analysis (*Infra*, III.B at footnote 2) and the holding in *Sierra Club, supra*, would deem that type of interest too general and thus insufficient to establish injury for purposes of conferring "standing."

Additionally, rezoning is an event separate and apart from the issuance of permits. Absolutely no development can commence, even though the parcels have been rezoned, until Botany Bay applies to the various executive agencies for all required permits. Issuance of those permits would depend wholly upon compliance with *inter alia* all environmental laws and concerns.[7]

■ ■ The Court also reviewed EAST's contention that standing is conferred upon it by the statutory grant of 29 V.I.C. § 239 or the provisions of the Antiquities and Cultural Properties Act.[8] In that regard, "[t]he inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff." *Flast v. Cohen*, 392 U.S. 83, 100, 88 S. Ct. 1942, 1952, 20 L. Ed. 2d 947. Unfortunately, the provisions of § 239 only provide general regulations on public hearings, such as general and direct notice to be given, transcription of testimony given, who may appear, and a time frame for rendering decisions. There is NO provision in § 239 conferring standing for declaratory judgment or injunctive relief or the procurement of any remedy at law or in equity. The Antiquities and Cultural Properties Act also fails to confer standing to EAST because the provisions of that Act

---

under American rule as recently as the nineteen fifties. It is the intent of the Legislature to preserve what has been a tradition and to protect what has become a right of the public.

The specific section regarding the public's right to enjoy the shoreline is at § 402(a), which states in pertinent part:

It is hereby declared and affirmed that the public individually and collectively, has and shall continue to have the right to use and enjoy the shorelines of the United States Virgin Islands.

[7] Rezoning does not enable Botany Bay to physically alter the land without the required permits, as noted by Chris Larson in his article "*CZM Finds Botany Bay Application Needs Minor Revisions Before Hearing*, THE VIRGIN ISLANDS DAILY NEWS, April 4, 2002, at Pg. 3. "Botany Bay Partners has applied for a Coastal Zone Management permit but must respond to a list of deficiencies before a public hearing on the application will be scheduled."

[8] 29 V.I.C. § 280, *et seq.*

apply only to those persons intending to conduct archaeological tests, probing, or investigations.[9]

Given no legally recognized "injury in fact" or any statutory conferral which would withstand the Chemerinsky analysis and the holding in *Sierra Club*, EAST must be dismissed as a party plaintiff for lack of standing.

## C. When Constitutional Violations Are Alleged, The Individual Landowners Have Standing to Object to a Rezoning Amendment Despite Their Failure to Appear, Object, Or Go On The Record At Public Hearings.

The remaining plaintiffs Werner Wernicke, Patricia Shapely, John Shapely, Charles Hamilton, and Hubert Brumant are all landowners in Estate Fortuna. Should the zoning remains as amended, the individual plaintiffs contend they will suffer pecuniary damage from the diminution in value of their property, the environment of the area will suffer significant damage, the infrastructure of the area would be compromised, and the quality of life will be significantly lessened. The individual plaintiffs however failed to appear or make any objection in writing or through an agent at the public hearings on rezoning held by DPNR on November 23, 2001 or at the December 6, 2001 hearing by the Legislature.

The Government, citing *Leoni v. Whitpain TP Zoning Hearing Board*, 709 A.2d 999 (Pa. Cmmw. 1998), contends that landowners who fail to object to the rezoning or fail to go on the record at public hearings, lack standing to object to the rezoning after it has become law. *Leoni* provides in pertinent part:

> Our conclusion is supported by the fact that the [plaintiff] cannot avoid the well established principle against raising issues for the first time on appeal; in the zoning context, issues not raised before a zoning board are not preserved for appeal absent due cause, such as a situation where the appellant had been prevented from raising those issues before the board. *See, e.g., Seneca Mineral Co. v. McKean Township Zoning Hearing Board*, 124 Pa. Cmmw. 389, 556 A.2d 496 (1989). Here, of course, where no objectors appeared

---

[9] 29 V.I.C. § 954.

in the Board proceedings, no issues were presented before the Board in opposition to the zoning request, and there is no indication that the [plaintiffs] were somehow prevented from appearing or objecting. The [plaintiffs] had an opportunity to attend the hearing, object and be heard, but they gave up that opportunity. The [defendants], on the other hand, have been inequitably denied an opportunity to address the post-hoc challenges of this non-party during the hearing before the administrative body whose function it is to hear and decide these matters.

*Id.* at 1002, 1003.

While the reasoning in *Leoni, supra* is persuasive, it is not controlling because: (1) the Pennsylvania Court is interpreting the statutory law of that state which specifically requires the person bringing an action to be a "party" at the zoning board's hearing in order to be a "person aggrieved" for standing purposes; and (2) the plaintiffs have raised constitutional issues which are inherently addressed by the judiciary and not during public hearings before administrative agencies or the Legislature.[10]

■ Because the plaintiff landowners allege constitutional violations and can establish a substantial stake in the outcome of the litigation as a result of the rezoned parcels being located near or contiguous to their property, they have "standing" to sue notwithstanding their failure to appear and/or object at the public hearings on the rezoning of the parcels in question.

### D. Private Parties Are Not Subject to Constitutional Infringement Claims Where No Nexus Exists Between The Action of the Private Party and State Action.

In their original and amended complaint, plaintiffs condemn not only the various governmental agencies for violating their constitutional rights but also accuse the private developer Botany Bay of doing the same. Generally, private parties cannot be sued for alleged violations of

---

[10] Interference with constitutional rights is also considered irreparable injury for purposes of seeking injunction. Relief can only be given through the judicial process. *See West Indian Co., Ltd. v. Government of the Virgin Islands*, 22 V.I. 358, 382 (3d Cir. 1986), quoting *Planned Parenthood v. Citizens For Com. Action*, 558 F.2d 861, 867 (8th Cir. 1977); *Henry v. Greenville Airport Commission*, 284 F.2d 631, 633 (4th Cir. 1960).

another's constitutional rights. The U.S. Supreme Court held in *American Manufacturers Mutual Insurance Company v. Sullivan*, 526 U.S. 40, 52, 143 L. Ed. 2d 130, 119 S. Ct. 977 (1999) that, "[a]ction taken by private entities ... is not state action" sufficient to create a claim for deprivation of a constitutional right or violation of 42 U.S.C. § 1983 unless "*there is a sufficiently close nexus between the State and the challenged action of the [defendant] so that the action of the latter may be fairly treated as that of the state itself.*" See also Blum v. Yaretsky, 457 U.S. 991 (1982).

In illustrating what is and what is not considered a sufficient nexus to impute state action to an otherwise private entity, the Court in *Palmer v. Columbia Gas of Ohio, Inc.*, 342 F. Supp. 241, (D.C. Ohio 1972), *aff'd* 479 F.2d 153, 72 Ohio Op. 2d 337 (2d Cir. 1974), held where the operations of a private gas company were fully circumscribed by an all-encompassing system of state statutes, city ordinances and under the supervision of a state regulatory authority, and the state was significantly involved in virtually all of the company's activities, including specific activity complained of, *i.e.*, termination of service after default in payment, then the private entity would be deemed an instrumentality of the state and thus subject to constitutional limitations and civil rights actions. On the other hand, "action taken by private entities with the mere approval or acquiescence by the state is not a sufficient nexus to impute the private entity with state action. "*Blum, supra* at 1004-1005, 102 S. Ct. 2777, *see also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449 (1974).

In the case under consideration, the plaintiffs filed suit against public officials, executive agencies, the Legislature, and *a private developer*. With respect to the private developer, it was merely alleged in the amended complaint that the proposed commercial use of the land owned by Botany Bay is inconsistent with the Legislature's 1994 designation of that area as an "Area of Particular Concern." Allegations contained in both the complaint and amended complaint are devoid of any suggestion whatsoever that a nexus existed between the private developer and the Territorial Government. Plaintiffs have never alleged Botany Bay to be anything more than a limited liability partnership organized and existing under the laws of the U.S. Virgin Islands and the owner of the subject parcels of land. The only connection between Botany Bay and the Government is the petition by Botany Bay to the Legislature requesting

its property to be rezoned for the purpose of constructing and operating a hotel, residential facilities, and commercial facilities. Obviously, the plaintiffs' assertions are insufficient to meet the standard in *Palmer*. Furthermore, rezoning can only be achieved after public hearings, passage of the zone change by a majority of the Legislature, and approval by the Governor. Even now, as mentioned previously, development of the rezoned parcels still requires the issuance of the necessary and appropriate permits by the administrative agencies.

■ Given the absence of any allegation or evidence to support the notion that the Territorial Government is inextricably intertwined with the internal operations of the private developer so as to construe the private developer's actions to be "state actions", no constitutional infringement or civil rights violation actions can be sustained against Botany Bay. Hence, Botany Bay must be dismissed as a party defendant.

## E. Legislative Immunity Prevents The Naming of the Legislature as a Party to This Action.

■ The Legislature asserts immunity from all claims asserted in the Plaintiffs' complaint pursuant to section 6(d) of the 1954 Revised Organic Act of the Virgin Islands, as amended.[11] That provision provides as follows:

> No member of the legislature shall be held to answer before any tribunal other than the legislature for any speech or debate in the legislature and the members shall in all cases, except treason, felony, or breach of the peace, be privileged from arrest during their attendance at the sessions of the legislature and in going to and returning from the same.

In *Lewis v. Legislature of the Virgin Islands*, the Legislature was judicially ruled to be immune from suit for its legislative acts. Pertinent parts of that opinion provided that:

> It is further undisputed that, when the Legislature determines matters of general zoning policy, its actions are clearly legislative and are not subject to judicial review.[FN3] This is because legislators are absolutely immune from judicial interference—they

---

[11] *See* 48 U.S.C. § 1572(d).

233

have a "right not to stand trial". *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 44 L. Ed. 2d 324, 95 S. Ct. 1813 (1975); *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 64 L. Ed. 2d 641, 100 S. Ct. 1967 (1980); *Powell v. Ridge*, 247 F.3d 520 (3d Cir. 2001).

Civ. No. 563/2001, slip op. at 2 (Terr. Ct. January 24, 2002). The *Lewis* Court further held that:

> This immunity is not lost merely because the legislative body has passed a *de jure* law affecting only a single person. *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760 (3d Cir. 2000); *Acierno v. Cloutier*, 40 F.3d 597 (3d Cir. 1994) (*en banc*) (action not stripped of legislative nature merely because directed at one parcel) (abrogated in part by *Larson*, 152 F.3d at 252 (3d Cir. 1998)). Similarly, this absolute legislative immunity is not lost simply because the resulting legislative acts may later be found to violate a plaintiff's rights. *See Consumers Union*, 446 U.S. at 733-734.

*Id.* at 3.

Based on the cited authorities *supra*, the Legislature is clearly immune from suit for its legislative acts and must be dismissed as a party defendant.

## F. The Plaintiffs' Fifth Amendment Due Process Rights Have Not Been Violated By Any Governmental Entity.

The Plaintiffs contend that passage of Bill No. 24-0199 is inconsistent with the comprehensive zoning plan of the Territory and the 1994 designation of Botany Bay as an "Area of Particular Concern". Plaintiffs further assert that the proposed commercial use of the rezoned land in Botany Bay is incompatible with the surrounding area and therefore violates Plaintiffs protected property interest. V.I. CODE ANN. tit. 29, § 221 reads in pertinent part:

> It is further intended that the zoning districts established by this law shall be implemented in accordance with a comprehensive land use plan and policy whereby the location of each district shall be made with reasonable consideration to the character of the district and its peculiar suitability.

234

Although it is alleged in the amended complaint that the rezoning is out of harmony with the comprehensive land use plan for that area, plaintiffs fail to identify specifically what land use plan they reference. The Court, however, takes judicial notice of V.I. CODE ANN. tit. 12, § 907, which provides for such a plan and states:

> The Coastal Land and Water Use Plan, identified as Document Numbers LWUP-1-4, inclusive, are hereby approved and shall be implemented. This plan shall be used to the maximum extent feasible as the long-range guide by the Commission, Commissioner, Virgin Islands Planning Office and any other agency of the Government of the United States Virgin Islands, in reviewing and recommending zoning amendments, capital improvement programs or projects, public land acquisition or disposition, designating areas of particular concern, and other development activities within the first tier of the coastal zone, but excluding development activities requiring a coastal zone permit under section 910 of this chapter. The Coastal Land and Water Use Plan is not intended to change any of the existing zoning district maps, or place any limitations on any of the uses permitted in the zoning districts established pursuant to Title 29, chapter 3, of this Code.

As a result of the alleged disharmony, plaintiffs conclude that defendants' actions deprive plaintiffs of their property interest without due process of law.

Preliminarily, agencies of the Virgin Islands Government are mandated to give deference to the Comprehensive Land and Water Use Plan referred to in V.I. CODE ANN. tit. 12, § 907. The Legislature, however, is not so required. In fact, the statute merely provides that "[the plan] shall be used *to the maximum extent feasible.*" *Id.* The Legislature may even enact zoning changes despite disapproval by DPNR. In that regard, V.I. CODE ANN. tit. 29, § 238, specifically provides *inter alia*:

> A proposal disapproved by the Planning Office[12] may be adopted by the Legislature.

---

[12] The Planning Office is a Division of Planning within DPNR. *See*, 3 V.I.C. § 402.

██ Consequently, the Legislature is authorized and free, in its sole discretion, to amend any provision of the zoning law, zoning maps, or zoning boundaries without running afoul of an individual's Fifth Amendment rights, *if certain procedures are followed.*[13]

In every Fifth Amendment challenge, the initial inquiry is whether a person or party has been deprived of a protected interest in life, liberty, or property *without due process of law.* The Fifth Amendment protection applies to the states through the Fourteenth Amendment and to the Territory of the Virgin Islands through § 3 of the Revised Organic Act of 1954, as amended,[14] which states in pertinent part:

> No law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny to any person therein equal protection of the laws.

The procedure utilized for amending zoning districts is set forth at V.I. CODE ANN. tit. 29, § 238, which provides in pertinent part:

> (a) Any provision of this subchapter, as well as the boundaries of the various Zoning Districts herein, may be amended or repealed by the Legislature of the Virgin Islands *after due public notice and hearing where parties in interest and citizens shall have an opportunity to be heard,* subject to the provisions of this section and section 239 of this subchapter.

*Id.* (emphasis provided).

██ In order to contest the constitutionality of a zoning regulation on substantive due process grounds, the plaintiffs must allege: (1) that the regulation on its face deprives them of a constitutionally protected interest; and (2) that the regulation lacks any rational relationship to a legitimate governmental interest. *See, Kittay v. Giuliani,* 112 F. Supp. 2d

---

[13] This procedure is not completely standardized, and some discretion is given to the government in deciding what procedures are sufficient to safeguard the interests sought to be protected. *See Ex Parte Wall,* 107 U.S. 265, 289, 2 S. Ct. 569, 589, 27 L. Ed. 552, 572, 5 KY. L. RPTR. 3 (1883) ("In all cases, that kind of procedure is due process of law which is suitable and proper to the nature of the case, and sanctioned by the established customs and usages of the courts.") The test for weighing necessary procedure can be found in *Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

[14] *See* 48 U.S.C. § 1561.

342, 352 (S.D.N.Y. 2000), *aff'd* 252 F.3d 645 (2d Cir. 2001). In that regard, "the Constitution does not create property interests, but protects established entitlements" and "the primary source of property rights is state law." *Schuster v. Thraen*, 18 V.I. 287, 296 (D.C.V.I. 1981). Zoning laws in the Virgin Islands, however, like those of other jurisdictions, do not create a property interest in the *continued zoning designation of adjoining property. See* 29 V.I.C. § 221 *et seq.; also see New Port Largo, Inc. v. Monroe County*, 95 F.3d 1084, 1090 (11th Cir. 1996) (stating that there is no constitutional right to be free of all changes in zoning laws and uses of adjoining property) *citing Lakeview Development Corp. v. City of South Lake Tahoe*, 915 F.2d 1290, 1295 (9th Cir. 1990).

▮▮ Because strict adherence to the comprehensive plan is discretionary and "not cast in iron", and the Virgin Islands statutory scheme for obtaining a zone change satisfies both substantive and procedural requirements of due process by affording affected parties an opportunity to be heard at a meaningful time and in a meaningful manner,[15] no constitutional due process violations against the remaining governmental defendants can be established.

## G. The Plaintiffs' Equal Protection Claim Against The Governmental Entities Can Not Be Substantiated Because It Fails to Identify Any Disparate Treatment.

Ordinarily, "zoning regulations constitute a valid exercise of police power when they have a rational relation to the public health, safety, or general welfare." *Gruebel v. McLaughlin*, 4 V.I. 491, 499 (3d Cir. 1968), citing *Euclid v. Amber Realty Co.*, 272 U.S. 365 (1926).

'Under the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation,'... 'courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws'; and 'legislative bodies have broad scope to experiment with economic problems.' 'The role of the judiciary in determining whether the legislative power is being exercised for a public purpose is an extremely narrow one' and once the public purpose has been established the means of its effectuation are for the

---

[15] *See Mathews v. Eldridge*, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

legislative body—and it alone—to determine.' Courts 'do not sit as a super-legislature to weigh the wisdom of the legislation' and they *'leave debatable issues as respects business, economic and social affairs to legislative decision.'*

*Gruebel* at 511, *citing Ferguson v. Skrupa*, 372 U.S. 726, 729, 10 L. Ed. 2d 93, 83 S. Ct. 1028-30 (1963); *Berman v. Parker*, 348 U.S. 26, 32, 99 L. Ed. 27, 75 S. Ct. 98-33 (1954); *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423, 96 L. Ed. 469, 72 S. Ct. 405, 425 (1952) (emphasis in original). Notwithstanding the cited general rule and rationale, plaintiffs nevertheless contend, in Count II of their amended complaint, that the Government engaged in impermissible "spot zoning", at the behest of Botany Bay, by rezoning the parcels owned by Botany Bay from R-1 to R-3. It was further alleged that no consideration was given to the character of the district, its particular uses, its environmental and historical attributes, or the affect that rezoning would have upon surrounding districts.

Because of alleged "preferential" treatment given to Botany Bay, the plaintiffs maintain that their "rights" were violated. "Such conclusory allegations cannot be accepted at face value in this area of law." *Pace Resources, Inc. v. Shrewsbury Township*, 808 F.2d 1023, 1026 (3d Cir. 1986), *see e.g. Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d. Cir. 1976), *Boykins v. Ambridge Area School Dist.*, 621 F.2d 75 (3d. Cir. 1980).

Conspicuously absent from the plaintiffs' bald assertion is any allegation identifying a similarly situated petitioner who received treatment different from that given to Botany Bay. Assuming *arguendo* that the plaintiffs could identify another landowner, who unsuccessfully petitioned for a zone change to accommodate plans for development, that rejection in and of itself would fall short of establishing a violation of plaintiffs' equal protection guarantees, particularly without showing that: (1) all other persons who ever applied for a zone change were denied the same; (2) all other persons who ever unsuccessfully applied for a zone change were similarly situated to Botany Bay; and (3) persons who unsuccessfully applied for a zone change belonged to a "suspect" group.[16] In order to establish preferential treatment was given to Botany

---

[16] In the absence of a suspect class or violation of a fundamental right, plaintiffs' equal protection claim merits no heightened scrutiny. *See Taylor Inv., Ltd. v. Upper*

Bay, this Court has held that different treatment does not *ipso facto* establish a violation of equal protection because the Equal Protection clause only guarantees like treatment to persons similarly situated. *Goodwin v. Goodwin*, 23 V.I. 80, 89 (Terr. Ct. 1987) *citing Cal. Ass'n of Physically Handicapped v. F.C.C.*, 721 F.2d 667, 670 (9th Cir. 1983).

▇▇ Taking the foregoing into consideration, and the absence of any allegation of disparate treatment recognized by law, it is concluded that plaintiffs' complaint and amended complaint fail to state a cause of action for which relief can be granted based upon a equal protection violation.

## H. No Sanctions Are Warranted Against Any Counsel For Defendants In Regards To This Matter.

This Court issued a show cause Order to the defendants' respective counsel on January 16, 2002, regarding their failure to address this Court's Order for advisement issued January 2, 2002. Upon further review of the record, the Court finds that any such sanctions in regards to the Order issued January 2, 2002, are inappropriate in light of the Order's specific instructions for *only the Plaintiffs* to respond.

## I. Manifest Deficiencies In The Plaintiffs' Amended Cause of Action Remain Despite Consideration Given to Pleaded Issues Argued in Plaintiffs' Reply to the Defendants' Respective Motions to Dismiss.

The plaintiffs in this matter were ordered on December 28, 2001 to file a response to the defendants' respective motions to dismiss. The plaintiffs filed a motion with the Court to extend their time to respond on January 25, 2002. Plaintiffs' counsel maintains that she was unable to properly draft a response to the defendant's motions due to time constraints posed by other cases as well as the fact that she did not receive a copy of the Government's Motion to Dismiss until January 24, 2002. Finally, the attorney claims that the time spent addressing the

*Darby Tp.*, 983 F.2d 1285, 1294 (3d Cir. 1993), *citing Lyng v. Castillo*, 477 U.S. 635, 638-39, 106 S. Ct. 2727, 2729-30, 91 L. Ed. 2d 527 (1986). Therefore, like their substantive due process claim, plaintiffs can prevail on equal protection claim only if the [Government's] actions were not rationally related to a legitimate purpose. *See Rogin v. Bensalem Tp.*, 616 F.2d 680, 687 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029, 101 S. Ct. 1737, 68 L. Ed. 2d 223 (1981).

Court's Order issued January 2, 2002 delayed her adherence to the time constraints previously mentioned. Despite no leave being granted by the Court, the plaintiffs nevertheless filed their response to the defendants' motions to dismiss on February 22, 2002, which, insofar as they relate to matters contained in the complaint or amended complaint, the Court has considered.

In response to the defendants' motion to dismiss filed February 22, 2002, plaintiffs' contend for the first time that Botany Bay illegally subdivided the parcels in question by not only impermissibly partitioning a plot of its land into six (6) parcels[17] without applying for a subdivision permit as required by 29 V.I.C. § 273, but by also compounding the illegality by later subdividing two of those six (6) parcels into an additional 6 lots.[18]

Additionally, Plaintiffs contend that DPNR regulations[19] require the owner of the land to file with its application for subdivision a plan delineating the grades of the proposed roads, locations of the lots created, drainage and erosion controls, sanitary facilities and other mitigation. Because of the illegal subdivision and the violation of the DPNR regulations, plaintiffs maintain that Act No. 6484 is void *ab initio* because there existed no legal parcels to rezone.

First of all, the plaintiffs cite no legal authority for the proposition that violation of an administrative agency regulation voids a legislative enactment. Secondly, the Court may not consider matters beyond the facts alleged in the complaint or amended complaint.[20] Additionally, the legality of the subdivision has little or no bearing on the rezoning of specific parcels.[21] Hence, the issue regarding the impact of a possible illegal subdivision cannot be entertained.

---

[17] Identified in OLG # A9-561-T000.

[18] Identified in OLG # A9-567-T001.

[19] The plaintiffs do not cite the pertinent DPNR regulations relied on.

[20] In ruling on motion to dismiss, the Court was not permitted to go beyond facts alleged in complaint and documents on which claims made therein were based. *See U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002), *see also Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985); *also In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir. 1993).

[21] Likewise, the rezoning does not affect subdivision or use of the land without the granting of permits for development.

240

## IV. CONCLUSION

In view of the foregoing the Court concludes that (1) the plaintiffs may amend their complaint without leave of court since no responsive pleading has been served; (2) the injuries alleged by EAST are insufficient to confer standing upon it; (3) the individual landowners have standing to object to a rezoning amendment which has been enacted into law, even though the individuals failed to object or go on record at public hearings because constitutional violations are alleged; (4) private parties are not subject to constitutional infringement claims where no nexus exists between the action of the private party and state action; (5) Legislative Immunity prevents the naming of the Legislature as a party to the action; (6) the plaintiffs' Fifth Amendment Due Process rights have not been violated by any Governmental entity; (7) the plaintiffs' Equal Protection claims against the Government entity cannot be substantiated because they failed to identify any disparate treatment; (8) no sanctions are warranted against any counsel for the defendants in this matter; and (9) manifest deficiencies in the plaintiffs' amended cause of action remain despite consideration of plaintiffs' reply to the defendants' respective motions to dismiss. Accordingly, motions by the respective defendants to dismiss the action are granted.