

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-1998

# First Liberty Inv v. Nicholsberg

Precedential or Non-Precedential:

Docket 97-1514

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"First Liberty Inv v. Nicholsberg" (1998). *1998 Decisions.* Paper 137.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/137

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 9, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-1514

FIRST LIBERTY INVESTMENT GROUP

v.

ERIC SCOTT NICHOLSBERG,
        Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 97-cv-00452)

Argued March 9, 1998

BEFORE: STAPLETON and ALITO, Circuit Judges, and
SHADUR, District Judge*

(Opinion Filed June 9, 1998)

Marvin Gersten
Kenneth Gatz (Argued)
Gersten, Savage, Kaplowitz,
 Fredericks & Curtin
101 East 52nd Street
New York, NY 10022
 Attorney for Appellant

_____

*Honorable Milton I. Shadur, Senior United States District Judge for the
Northern District of Illinois, sitting by designation.

Margaret Sherry Lurio
  (Argued)
Lurio & Associates
Suite 1300
1760 Market Street
Philadelphia, PA 19103-4132
  Attorney for Appellee

OPINION OF THE COURT

SHADUR, Senior District Judge:

Eric Scott Nicholsberg ("Nicholsberg") appeals a district court's denial of his motion, brought under the Federal Arbitration Act (the "Act," 9 U.S.C. SS 3-4), to stay a breach of contract action and to compel arbitration of the claim brought against him in that action by First Liberty Investment Group ("First Liberty"). First Liberty had initiated its lawsuit to recover money damages stemming from Nicholsberg's alleged breach of an employment agreement. For the reasons stated below, we reverse the district court's order and remand to that court so that it may stay the action and order the parties to proceed to arbitration.

Facts[1]

We briefly summarize the uncontroverted essential facts. Other relevant facts that fit better into the substantive legal discussion will be set out later in this opinion.

In February 1996 Nicholsberg began his association with First Liberty, a broker-dealer registered with the National Association of Securities Dealers, Inc. ("NASD"). As a condition of his employment in the securities industry, Nicholsberg executed a "Uniform Application for Securities Industry Registration or Transfer" (universally referred to as "Form U-4"), which both he and an agent for First Liberty

_____

1. This statement is drawn from the parties' briefs and the district court's unreported opinion, available at 1997 WL 312123 (E.D. Pa. June 3).

2

signed. Among other things, Form U-4 required Nicholsberg to "arbitrate any dispute, claim or controversy" that might arise between him and First Liberty "that is required to be arbitrated under the rules, constitutions or by-laws" of NASD. Form U-4 thus incorporates by reference the NASD Code of Arbitration Procedures (the "NASD Code").

On March 11, 1996 the parties entered into the OSJ Principal Agreement (the "Agreement"), under which First Liberty agreed to provide Nicholsberg with facilities to execute various types of securities transactions. Two aspects of the Agreement are at the core of the current dispute:

> 1. It characterized Nicholsberg as an independent contractor rather than as an employee of First Liberty.

> 2. Its provisions, looked at alone, were silent as  to the arbitrability of disputes between the parties.

As we have stated at the outset, on January 21, 1997 First Liberty filed a breach of contract action against Nicholsberg to recover monies assertedly owed it under the Agreement. Shortly thereafter Nicholsberg moved to stay the proceeding and to compel arbitration of the claim. This appeal stems from the district court's denial of Nicholsberg's motion. We review that denial de novo (In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions ["Prudential Agents"], 133 F.3d 225, 227 n.1 (3d Cir. 1998)).

Arbitrability of the Parties' Dispute

Arbitration is a creature of contract (see AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986)). "As a matter of contract, no party can be forced to arbitrate unless that party has entered into an agreement to do so" (PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)). And as we recently observed in Prudential Agents, 133 F.3d at 228:

> A threshold inquiry under the Federal Arbitration Act is to determine, under recognized principles of contract law, the validity of, and the parties bound by, the arbitration agreement.

Here Nicholsberg's Form U-4 supplies such a potentially applicable agreement (at least on his part):

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD] as may be amended from time to time....

For its part, although one of First Liberty's authorized agents also signed Form U-4, it is not a direct party to that document.2 Rather Form U-4 is more correctly understood as a contract between Nicholsberg and NASD, not between Nicholsberg and First Liberty (Prudential Agents, 133 F.3d at 228 n.5, citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 n.2 (1991)).

That, however, does not prove fatal to Nicholsberg's request for arbitration. As we went on to say in Prudential Agents, 133 F.3d at 229, quoting Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1512 (3d Cir. 1994), aff'd, 514 U.S. 938 (1995):

> The identification of the parties bound by the agreement to arbitrate need not be confined to the limited inquiry of identifying the signatories to the

_____

2. Here is what First Liberty represented, as Form U-4 required:

> To the best of my knowledge and belief, the applicant is currently bonded where required, and, at the time of approval, will be familiar with the statute(s), constitution(s), rules and by-laws of the agency jurisdiction or civil regulatory organization with which this application is being filed, and the rules governing registered persons, and will be fully qualified for the position for which application is being made herein. I agree that, notwithstanding the approval of such agency, jurisdiction or organization which hereby is requested, I will not employ the applicant in the capacity stated herein without first receiving the approval of any authority which may be required by law. This firm has communicated with all of the applicant's previous employers for the past three years.

[Past employer information]

> IN ADDITION I HAVE TAKEN APPROPRIATE STEPS TO VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS APPLICATION.

arbitration agreement. Rather, the dispositive finding is an " `express' and `unequivocal' " agreement between parties to arbitrate their disputes.

In this instance the requisite intent on First Liberty's part to resort to arbitration is provided by its post-Form U-4 entry into the Agreement with Nicholsberg. Despite its labeling of Nicholsberg as an "independent contractor" (of which more later), the Agreement goes on to say in terms that are both express and unequivocal:

Nevertheless, for fulfillment of this contract and for the mutual benefit of both parties it is necessary that both parties at all times fully comply with applicable regulations of the...NASD.

Thus, entirely without reference to Nicholsberg's undertaking in the Form U-4, the terms of the Agreement (committed to by both First Liberty and Nicholsberg) clearly incorporate by reference all requirements applicable to their relationship as imposed by NASD. And it is equally clear that such incorporation by reference necessarily encompasses the NASD Code, if and to the extent that it covers their relationship. Indeed, even in the absence of such a commitment in the Agreement, it has long been established (see, e.g., Axelrod & Co. v. Kordich, Victor & Neufeld, 451 F.2d 838 (2d Cir. 1971)) that, with NASD being a self-regulating organization within the terms of the Securities Exchange Act of 1934 ("1934 Act"), each of its members such as First Liberty is contractually bound by its regulations--including all of its arbitration provisions.

Before we turn to those NASD Code provisions, we pause to dispatch First Liberty's contention that because the later-signed Agreement contains an integration clause, it somehow acts to supersede the earlier-dated Form U-4. If Nicholsberg had to rely on First Liberty's limited involvement in the Form U-4 (as he does not), he could point to the principle expressed in Zandford v. Prudential-Bache Sec., Inc., 112 F.3d 723, 727 (4th Cir. 1997), quoting Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 255 (1977):

When a party seeking to avoid arbitration contends that the clause providing for arbitration has been

5

superseded by some other agreement, "the presumptions favoring arbitrability must be negated expressly or by clear implication."

But any potential issue involving the Form U-4 is really a red herring. What controls instead is that, as we have already explained, the document that contains the integration clause--the Agreement itself--incorporates by reference the NASD Code and thus contractually obligates both First Liberty and Nicholsberg to arbitrate certain disputes.

We return then to the coverage of the NASD Code's arbitration mandate. Two of its Rules are particularly relevant here.

First, "Section 1 [now Rule 10101 as the result of a subsequent amendment] defines the general universe of issues that may be arbitrated" (Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 798 (10th Cir. 1995)). Under Rule 10101 matters eligible for submission to arbitration include:

> any dispute, claim or controversy arising out of or in connection with the business of any member of the [NASD], or arising out of the employment or termination of employment of the associated person(s) with any member...:

* * *

> (b) between or among members and associated persons....

Next, "Section 8 [now Rule 10201(a) as the result of the same amendment] describes a subset of that universe of disputes that must be arbitrated under the Code" (Armijo, 72 F.3d at 798):

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such

6

associated person(s) with such member, shall be arbitrated under this Code, at the instance of:

* * *

       (2) a member against a person associated with a member or a person associated with a member against a member....

Thus the NASD Code imposes two requirements for a securities industry dispute to be arbitrable. First is a restriction on the parties: In terms relevant to the present situation, the dispute must be "between...members and associated persons." Second is a restriction on the subject matter: All of the substantive disputes must be ones "arising in connection with the business" of members or arising "in connection with the activities of such associated person(s)" or "arising out of the employment or termination of employment of such associated person(s) with such member." We consider each requirement in turn.

Are the Parties Subject to Arbitration Vis-a-Vis Each Other?

Whether the present litigants are parties whose disputes with each other are arbitrable at all is a function of the NASD Code's Rule 10101 mandate that extends to the arbitration of disputes "between...members and associated persons." It is undisputed that First Liberty is a member of NASD. At issue instead is the other half of the necessary arbitration twosome: whether Nicholsberg qualifies as an "associated person" within the scope of that mandate.

NASD By-Law Art. I(q) defines the term "associated person of a member" as:

       every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member....

That "associated person" concept did not originate with NASD--relatedly the 1934 Act, which provides the authority

7

for an individual exchange's self-regulating rules (Kaplan, 19 F.3d at 1517), defines "person associated with a member" or "associated person of a member" to mean (15 U.S.C. S 78c(a)(21)):

> any partner, officer, director, or branch manager of such member (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling, controlled by, or under common control with such member, or any employee of such member.

Analysis of the parties' relationship discloses that Nicholsberg plainly qualifies as an associated person within the meaning of both the NASD Code and the 1934 Act. That conclusion flows from the record's disclosure that when First Liberty initiated this lawsuit, Nicholsberg was both (1) a natural person engaged in the securities business who was "directly or indirectly...controlled by" NASD member First Liberty and (2) a natural person "performing similar functions" to those of a "branch manager" of First Liberty. Either of those satisfies the "associated person" definition.

To resist that conclusion, First Liberty urges that Nicholsberg cannot be an "associated person" because the Agreement specifically labels him as an independent contractor. That characterization, however, is not controlling in the face of the conflicting reality, as gleaned both from First Liberty's own depiction of the parties' linked relationship in various paragraphs of its Complaint and from provisions of the Agreement itself.

Here are some relevant portions of First Liberty's Complaint against Nicholsberg:

> 7. Pursuant to the Agreement, First Liberty and Nicholsberg agreed that First Liberty would provide facilities to Nicholsberg for execution of transactions....

> 8. First Liberty appointed Nicholsberg's office as an entity allowed under the provisions of the Agreement to offer and solicit the sales of securities.

> 9. Pursuant to the Agreement, First Liberty gave Nicholsberg geographic exclusivity in the New York, New York metropolitan area and agreed not to open

8

competing offices without the prior written consent of Nicholsberg....

And those undisputed allegations about the nature of the parties' relationship conjoin with other provisions in the Agreement in which:

1. Nicholsberg agreed to comply with and abide by all of the policies and rules included in First Liberty's Policy and Procedures Manuals.

2. Nicholsberg agreed that his office would not mail any correspondence or cause any advertising pertaining to securities solicitation without securing the prior approval of a First Liberty compliance officer.

3. Nicholsberg promised not to engage in a securit y transaction of any nature with any individual or broker-dealer other than through First Liberty.

To be sure, other provisions in the Agreement might perhaps successfully avert a finding that an agency relationship exists for purposes of imposing respondeat superior liability on First Liberty, but that is not the relevant inquiry here (and is a matter on which we express no view). What rather controls is that the parties' total relationship, including the limitations placed by First Liberty both on Nicholsberg's conduct of his business and on its own conduct of business, amount to at least indirect control and also to placing Nicholsberg in much the same practical position that would be occupied by a branch manager in charge of First Liberty's only New York metropolitan area office. And that in turn means that notwithstanding the Agreement's use of "independent contractor" and its disclaimer of an "agent" relationship, Nicholsberg was an "associated person" as to First Liberty.3

Indeed, if broker-dealers could escape the NASD arbitration requirements simply by calling someone acting
_____

3. This just-completed application of the substance-over-form principle is reminiscent of the rejection of the tyranny of labels traditionally attributed to Abraham Lincoln:

If you call a tail a leg, how many legs has a dog? Five? No, calling
a tail a leg don't make it a leg.

in Nicholsberg's capacity an independent contractor, they could easily frustrate NASD's firm policy of submitting industry disputes to binding arbitration. In sum, we conclude that First Liberty and Nicholsberg fall within the class of adversaries subject to mandatory arbitration under their contractual relationship, the former by virtue of its NASD membership and the latter as an associated person of a member.

Scope of the Parties' Arbitrable Disputes

With that issue having been resolved, the final analytical step is to ascertain whether the present dispute falls within the scope of the relevant arbitration clause. In that regard we are guided by settled principles of federal arbitration law.

Congress' adoption of the Act was intended to "revers[e] centuries of judicial hostility to arbitration agreements" (Scherk v. Alberto-Culver Co., 417 U.S. 506, 510 (1974)) and to replace that hostility with "a liberal federal policy favoring arbitration agreements" (Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Hence any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration (id. at 24-25; Mitsubishi Motors Corp. v. Soler Chrsyler-Plymouth, Inc., 473 U.S. 614, 626 (1985)). As we stated two decades ago in Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp., 589 F.2d 1214, 1219 (3d Cir. 1978), quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co. , 363 U.S. 574, 582-83 (1960):

> An order to arbitrate...should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

In light of those principles (or even without our having to invoke them), it takes only a brief look at the nature of First Liberty's claim to confirm that it falls well within the scope of the parties' commitment to arbitration.

First Liberty attempts to resist that result by positing that its breach of contract claim arises solely from the

10

Agreement and does not implicate Form U-4. From that premise it seeks to conclude that even if the NASD Code requires arbitration of pertinent disputes arising from the latter document, there is no basis for requiring arbitration in this case. But again the purported Form U-4 issue is a nonissue: First Liberty's contention is scotched by our earlier determinations (1) that the Agreement itse lf includes an incorporation by reference of the NASD Code and (2) that the Code requires the arbitration of busi ness disputes between members (in this instance First Liberty) and their associated persons (in this instance Nicholsberg).

Conclusion

As stated at the outset of this opinion, we REVERSE the district court's order denying Nicholsberg's motion to stay the proceedings and REMAND the matter to the district court with directions to order the parties to proceed to arbitration forthwith.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

11