**BAE SYSTEMS AIRCRAFT CONTROLS INC., Plaintiff,**

v.

**ECLIPSE AVIATION CORP., Defendant.**

**No. CIV.04–158–SLR.**

United States District Court,
D. Delaware.

Nov. 10, 2004.

---

**23.** Wilson Decl. ¶ 6.

William M. Kelleher, Esquire of Ballard, Spahr, Andrews & Ingersoll, LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: David H. Pittinsky, Esquire, Robert R. Baron, Jr., Esquire and Jeffrey P. Curry, Esquire of Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, Pennsylvania.

Mary B. Graham, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Counsel for Defendant. Of Counsel: David Schwarz, Esquire and Charles Elder, Esquire of Irell & Manella LLP, Los Angeles, California.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiff BAE Systems Aircraft Controls Incorporated ("Aircraft Controls") filed this action on March 12, 2004, against defendant Eclipse Aviation Corporation ("Eclipse"). Aircraft Controls is seeking a preliminary and permanent injunction enjoining Eclipse from infringing its copyrights, misappropriating its trade secrets and using or disclosing its confidential information. (D.I. 1 at 2) Aircraft Controls has also initiated arbitration proceedings against Eclipse for monetary damages. Aircraft Controls is a Delaware corporation, with its principal place of business in California. (*Id.* at 3) Eclipse is a Delaware corporation, with its principal place of business in New Mexico. (*Id.*) The court has personal jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are both citizens of the State of Delaware. In addition, the court has original and exclusive jurisdiction for any civil action arising under any Act of Congress relating to copyrights under 28 U.S.C. § 1338.

Currently before the court are: 1) Eclipse's motion to compel arbitration and dismiss or stay the proceedings pending completion of the arbitration; 2) Aircraft Controls' motion for expedited discovery; 3) Eclipse's motion to transfer venue; and 4) Aircraft Controls' motion to strike the "For Attorneys' Eyes Only" designation from Eclipse's brief and accompanying appendix. For the reasons stated below, Eclipse's motion to compel arbitration and stay this action is granted, Aircraft Controls' motion to expedite discovery is denied, Eclipse's motion to transfer venue is denied, and Aircraft Controls' motion to strike the "For Attorneys' Eyes Only" designation is granted.

## II. BACKGROUND

Eclipse is an aviation company based in Albuquerque, New Mexico. It is in the process of developing and bringing to the market the Eclipse 500, the first jet aircraft retailing for less than $1,000,000. (D.I. 1 at 4) Eclipse hired Williams International Co., LLC ("Williams") to find contractors to develop the various systems that would be incorporated into the Eclipse 500. (D.I. 14 at 4) On May 16, 2000, Williams entered into a Master Agreement ("Agreement") with Aircraft Controls. (D.I.1, Ex. B) The Agreement contained several attachments which also governed the relationship of the parties, including: Attachment A covering Purchase Order Terms and Conditions; Attachment C covering a Statement of Work; and Purchase Order # 333336. (*Id.*)

Under the Agreement, Aircraft Controls was obligated to develop, certify, and supply the Aircraft Integrated Electronic System

("AIES"), a component of the Eclipse 500, at a per-unit cost of $24,326 per annual supply of 1,500.[1] (D.I.14, 15) This work was novel and required Aircraft Controls to either custom design or modify existing components to develop the AIES. On March 20, 2001, Williams assigned his rights and obligations in the Agreement to Eclipse. (D.I. 1 at 4)

The Agreement contains several key provisions:

> *14.3 Confidentiality.* The parties agree, without limiting any of the remedies referred to in Section 22.8, that any disclosure of Confidential Information in violation of this Section 14 constitutes irreparable injury to the non-disclosing Party that will entitle the non-disclosing Party to injunctive relief. The non-disclosing party may, in its sole discretion, seek such injunctive relief from a court of competent jurisdiction.

(D.I. 1, Ex. B at 12)

> *19.5.1 Aircraft Controls' Remedies Upon Termination.* Except as provided in Section 14.3, the remedies of Aircraft Controls upon its termination of this Agreement for cause shall be limited to Aircraft Controls' right to recover damages, if any, in an action at law, and Aircraft Controls waives any right or remedy in equity, or right to enjoin or restrain or otherwise impair in any manner the production, distribution, exhibition, or other exploitation of the AIES or other product produced pursuant to the provisions of this Agreement or any parts or elements thereof or the use, publication, or dissemination of any advertising in connection therewith.

(D.I. 1, Ex. B at 16)

> *22.11 Dispute Resolution.* If a dispute, controversy, or claim ("Disputed Matter") arises between Aircraft Controls and Williams concerning the performance of this Agreement or any terms or conditions herein and the Parties fail to resolve the dispute by written agreement, except as provided in Section 14.3, (I) Aircraft Controls and Williams agree that any Disputed Matter shall be settled in accordance with the dispute resolution procedures detailed in Attachment "A" (Purchase Order Terms and Conditions), and (ii) the mediation and arbitration provided for in Attachment "A" (Purchase Order Terms and Conditions) shall be the sole and exclusive remedy of the parties for any Disputed Matter.

(D.I. 1, Ex. B at 22) Attachment A, the "Purchase Order Terms and Conditions," also contains some key language:

> *20.0 Disputes.* Williams and Aircraft Controls shall strive to settle amicably and in good faith any dispute arising in connection with this Agreement. If unable to do so, the dispute shall be resolved by binding arbitration conducted under the rules of the American Arbitration Association, as presently in force, by three arbitrators appointed in accordance with said rules. The place of arbitration shall be Detroit, Michigan. Pending resolution of any dispute hereunder, Aircraft Controls shall proceed diligently with the performance of work, including the delivery of Goods in accordance with Williams' direction. Upon resolution of the dispute, Orders shall be equitably adjusted, if necessary, to reflect such resolution.

(D.I. 1, Ex. C at 34)

In a June 18, 2003 meeting in Albuquerque, Aircraft Controls' representatives informed Eclipse that its AIES design would have a per-unit cost of $50,260 per annual supply of 1,500. (D.I.15, Ex. A) In response to this deviation, Eclipse sent Aircraft Controls a Notice of Breach on June 27, 2003. (D.I. 14 at 5) Aircraft Controls failed to remedy the breach within thirty days of Eclipse's notice as was required by the Agreement. On August 6, 2003, Eclipse sent Aircraft Controls a notice of termination for cause of both Purchase Order # 333336 and the Agreement. Aircraft Controls replied on August 19, 2003, by sending Eclipse a notice of termination for cause, characterizing Eclipse's failure to pay for certain invoices totaling over $8.5 million as grounds for termination. (D.I. 1 at 10)

---

1. The AIES consists of four components: the Aircraft Computer System; the Full Authority Digital Engine Controller; the global positioning system; and autopilot servo motors, which Aircraft Controls had to bundle into a single box.

Following the termination of the contract, Eclipse entered into agreements with several new vendors to develop systems to replace the AIES. Eclipse claims that it is not using the designs or specifications developed by Aircraft Controls to complete the project; rather, the new vendors are modifying their own proprietary designs to fit Eclipse's specifications. (D.I. 14 at 6) In addition, Eclipse contends that the architecture of the Eclipse 500 has changed significantly so that Aircraft Controls' designs are now obsolete. (*Id.*)

Aircraft Controls, on the other hand, claims that Eclipse is continuing to use, copy, make derivative works of, distribute, and disclose Aircraft Controls' intellectual property rights and confidential information after termination of the Agreement. (D.I. 1 at 12) Aircraft Controls claims that, during its course of work on the AIES, it delivered several critical copyrighted documents to Eclipse, each of which contained Aircraft Controls' trade secrets, including the Interface Control Drawing of the AIEU, the AIES–ACS System Requirements Specification, and the Software Requirements Data. (D.I. 1 at 8) Aircraft Controls contends that such conduct is in violation of its statutory rights under the Copyright Act, constitutes trade mark misappropriation under Delaware law and violates contractual provisions which prohibit the disclosing or intentional use of Aircraft Controls' confidential information. (D.I. 1 at 2)

## III. MOTION TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION

### A. Standard of Review

■ The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA mandates that district courts shall direct parties to proceed to arbitration on issues for which arbitration has been agreed, and to stay proceedings while the arbitration is pending. *See* 9 U.S.C. §§ 3, 4; *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Harris v. Green Tree Financial Corp.,* 183 F.3d 173, 179–80 (3d Cir.1999). However, district courts may

dismiss an action if all the issues raised are arbitrable and must be submitted to arbitration. *See Sagal v. First USA Bank, N.A.,* 69 F.Supp.2d 627, 632 (D.Del.1999); *Pelegrin v. U.S. Filter,* No. 97–390–SLR, 1998 WL 175880, at *4 (D.Del. Mar.31, 1998); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992); *Sparling v. Hoffman Constr. Co., Inc.,* 864 F.2d 635, 638 (9th Cir.1988); *Hoffman v. Fid. & Deposit Co.,* 734 F.Supp. 192, 195 (D.N.J.1990).

■ The FAA limits the role of courts to determine: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of the agreement. *John Hancock Mutual Life Ins. Co. v. Olick,* 151 F.3d 132, 136 (3d Cir.1998). In conducting this review, the court should apply the ordinary principles of contract law. *See* 9 U.S.C. § 2. Additionally, courts operate under a pronounced "presumption of arbitrability." *Battaglia v. McKendry,* 233 F.3d 720, 725 (3d Cir.2000) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Any doubts as to the scope of arbitrable issues should be resolved in favor of arbitration. *First Liberty Inv. Gp. v. Nicholsberg,* 145 F.3d 647, 653 (3d Cir.1998). A court may not deny arbitration, unless it can state with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Id.* Once a court answers both inquiries in the affirmative, it must refer questions regarding the enforceability of the terms of the underlying contract to an arbitrator, pursuant to section four of the FAA. *Great W. Mortgage Corp. v. Peacock,* 110 F.3d 222, 228 (3d Cir.1997).

### B. Discussion

Aircraft Controls, by its motion for a preliminary and permanent injunction, alleges that the copyright infringement, trade mark misappropriation, and use and/or disclosure of confidential information claims are not subject to arbitration, since Section 14.3 of the Agreement permits injunctive relief for the dissemination of confidential information. In its complaint, Aircraft Controls asserts that it delivered to Eclipse several critical

copyrighted documents which also contained trade secrets. Aircraft Controls claims that Eclipse is disclosing this information to the alternate suppliers of the AIES, thereby utilizing Aircraft Controls' proprietary information to finish the Eclipse 500 project. Presently before the court is Eclipse's motion to dismiss or stay the proceedings pending arbitration. For the reasons that follow, the motion to stay shall be granted.

■ Public policy favors the enforcement of arbitration clauses if the parties validly entered into the agreement and the specific dispute falls within the scope of the clause. In the case at hand, it is undisputed that the parties entered into a valid arbitration agreement when they executed the Agreement. They disagree, however, on whether the scope of the arbitration clause covers the disputes raised by Aircraft Controls in its complaint.

■ The Arbitration Clause of the Agreement, Section 14.3, covers all disputes, controversies, or claims arising between the parties in connection with the Agreement, with a single exception for the use or disclosure of confidential information; in such instances, injunctive relief for the non-disclosing party is permitted. The Agreement describes confidential information as:

> *1.5.1* Any and all ideas, information, concepts, designs, design processes, testing methods, architectures, knowledge, techniques, processes, methods, practices, inventions, products, specifications, drawings, test data, source materials, training and safety information and materials, maintenance and repair information and materials, documentation, models, component lists, manufacturing, works of authorship, discoveries, developments, innovations and improvements (and all related copyrights, patents, trade secrets and other IP rights . . .), whether tangible or in-

tangible, whether in written, oral, chemical, magnetic, photographic, optical, or other form, in all stages of research and development, and whether non existing, or developed or created at any time during which this Agreement between Williams and Aircraft Controls has been or is in effect between Williams and Aircraft Controls, that (a) are reasonably related to the business of Williams or Aircraft Controls, (b) involve Williams' or Aircraft Controls' past, present, or demonstrably anticipated research or development, (c) incorporate any non-public information relating to Williams or Aircraft Controls or their respective businesses or belonging to or possessed, licensed, used, or controlled by Williams or Aircraft Controls.

(D.I. 1, Ex. B at 2)

At first glance, Aircraft Controls' documents arguably fit within this broad definition of confidential information, thus permitting the injunctive relief sought. However, a court must interpret a provision of a contract in light of the contract as a whole. Taken as a whole, the contract clearly indicates that, upon termination of the Agreement, Eclipse is permitted to utilize Aircraft Controls' work product to complete the work specified in the Agreement.

Several provisions of the Agreement confirm this interpretation. For instance, upon the termination of the Agreement by either party, for cause or convenience, Eclipse is permitted to complete all design and development tasks required to fabricate, test and obtain civil certifications for the AIES, using its own services and/or those of a third party contractor.[2] (D.I. 1, Ex. B at 15–16) The Agreement also states that, upon termination of the Agreement for any reason, Aircraft Controls shall transfer title and deliver to Eclipse any deliverables generated by Air-

---

**2.** *Section 19.3.2* provides that, if the Agreement is terminated for cause by either party, Williams may, provided Aircraft Controls was the defaulting party, complete all design and developmental tasks required to fabricate, test and obtain civil certifications for the AIES and any derivative works thereof using Williams' own services and/or those of any third party contractor. *Section 19.4.2* provides that, if Williams terminates

any of the work being performed by Aircraft Controls under the Agreement for convenience, Williams may complete all design and developmental tasks required to fabricate, test and obtain civil certifications for the AIES and any derivative works thereof using Williams' own services and/or those of a third party contractor. (D.I. 1, Ex. B at 15–16)

craft Controls in connection with the Agreement.[3] (*Id.*)

If the termination is for cause, Aircraft Controls shall also deliver to Eclipse any materials, parts, plans, drawings, information, and contract rights produced by Aircraft Controls under the Agreement.[4] (*Id.* at 15) This provision covers the drawings, specifications, and requirements Aircraft Controls claims are being used and/or disclosed. Lastly, the internal disclosure of confidential information on a need-to-know basis is permissible.[5] (*Id.* at 12)

For the reasons outlined above, therefore, the court shall grant Eclipse's motion to compel arbitration and stay this action.

## IV. MOTION FOR EXPEDITED DISCOVERY

### A. Standard of Review

Generally, courts will not permit discovery from any source before the parties have conferred, unless the parties agree to or the court authorizes expedited discovery. Fed. R.Civ.P. 26(d), (f). Unlike other discovery provisions, the Federal Rules of Civil Procedure fail to provide a standard under which courts should decide expedited discovery motions. There are two prevalent standards used to evaluate motions for expedited discovery among the district courts in this circuit. One standard analyzes the expedited discovery request using factors similar to those used for injunctive relief or specific performance. *Notaro v. Koch*, 95 F.R.D. 403, 405 (D.N.Y.1982). The other standard requires that the moving party show that the expedited discovery request is reasonable in light of all the circumstances.

The first standard under *Notaro* requires courts to apply four factors to determine the propriety of expedited discovery. These factors consider (1) the irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. *Id.*

The second "reasonableness" standard is less demanding than the *Notaro* factors. It generally has been utilized when the purpose of the expedited discovery is to gather evidence for an upcoming preliminary injunction hearing. *Entertainment Tech. Corp. v. Walt Disney Imagineering, et al.*, 2003 WL 22519440 (E.D.Pa. Oct. 02, 2003). Application of this standard depends on the actual circumstances of each case, as well as consideration of certain factors such as a pending preliminary injunction hearing, the need for discovery, and the breadth of the moving party's discovery requests. If the discovery requests are narrowly tailored to fit the issues raised in the preliminary injunction, expedited discovery should be granted. However, where the requests are overly broad, leave should be denied. *Id.*

### B. Discussion

■ Aircraft Controls, by its motion for expedited discovery, seeks leave of the court

---

**3.** *Section 19.3.1* provides that, in the event that either party terminates the Agreement for cause, Aircraft Controls shall "promptly transfer title and deliver to Williams in the manner requested by Williams any and all Deliverables (other than Tooling) of any nature whatsoever generated by Aircraft Controls in connection with this Agreement, including but not limited to Schedules, Budgets, Specifications, and any all elements thereof, whether then complete or incomplete, and regardless of the stage of completion of such Deliverables." *Section 19.4.1* provides that, if Williams terminates all or any portion of the work being performed by Aircraft Controls under the Agreement for convenience, Aircraft Controls shall "transfer title and deliver to Williams in the manner and to the extent requested by Williams all Deliverables and work, including completed items, work in process, Materials and Tooling,

with respect to which work has been terminated by Williams." (D.I. 1, Ex. B at 15–16)

**4.** *Section 19.3.1(iv)* provides that, if either party terminates the Agreement for cause, Aircraft Controls shall "in the manner and to the extent requested by Williams, deliver to Williams, such materials, plans, drawings, information and contract rights as Aircraft Controls has specifically produced or acquired for the purpose of performing the terms of the Agreement." (D.I. 1, Ex. B at 15)

**5.** *Section 14.4* provides that each party shall limit internal disclosure of confidential information to those employees with a need-to-know for purposes necessary to the Agreement. (D.I. 1, Ex. B at 12)

to permit it to take five depositions and compel production of eleven documents. (D.I. 7 at 3) Aircraft Controls claims it needs expedited discovery to determine the extent of Eclipse's use and/or disclosure of its intellectual property rights and confidential information so that it can be fully prepared for the preliminary injunction hearing. (*Id.* at 2) Eclipse argues that the request should be denied because Aircraft Controls has not demonstrated irreparable harm, it failed to particularly identify its trade secrets, and the proposed scope of discovery is over broad. (D.I. 14 at 21) For the reasons that follow, Aircraft Controls' request for expedited discovery is denied.

In the case at bar, there is no need to select the appropriate standard to be applied to a request for expedited discovery because Aircraft Controls' request fails under either standard. The Agreement permits injunctive relief only for the use and/or disclosure of confidential information. In such instances, the Agreement states that irreparable harm is presumed and, therefore, the *Notaro* factors are met. However, the court has determined that arbitration should go forward, since the information at issue has been construed as falling within the scope of the arbitration clause. Consequently, if there is no preliminary injunction hearing to prepare for, the reasonableness test also fails.

For the reasons stated, Aircraft Controls' motion for expedited discovery is denied.

## V. MOTION TO TRANSFER

### A. Standard of Review

A district court may transfer any civil action to any other district or division where it may have been brought, if it is convenient for the parties and witnesses and in the interests of justice. 28 U.S.C. § 1404(a) (2003). Because courts accord a plaintiff's choice of forum substantial weight and only transfer venue if the defendant truly is regional (as opposed to national) in character, a defendant has the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" the defendant. *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel*

*Corp.,* 431 F.2d 22, 25 (3d Cir.1970)). To this end, "[d]efendants brought into suit in Delaware must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. *C.R. Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 562 (D.Del.1998).

In reviewing a motion to transfer venue, courts have not limited their consideration to the three enumerated factors in § 1404(a) (i.e., convenience of parties, convenience of witnesses, or interests of justice). Rather, courts have considered "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citation omitted). The Third Circuit, in fact, has provided a list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum." *Id.* These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

### B. Discussion

■ Eclipse moves the court to transfer this matter, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the

District of New Mexico. It claims that it is a small corporation whose documents and potential witnesses are in New Mexico and that New Mexico has a greater interest in the litigation. (D.I.20) Aircraft Controls opposes this motion and contends that Delaware is the proper forum since it is the state of incorporation for both parties and is entitled to deference as plaintiff's choice of forum. (D.I.35) For the reasons that follow, Eclipse's motion to transfer venue is denied.

In this case, Aircraft Controls has manifested a preference for Delaware courts, as it filed its claim in this forum. Although neither party maintains its principal place of business in Delaware, both parties are incorporated in Delaware and, therefore, are citizens of Delaware. Despite its characterization as a "regional" business, the record indicates that Eclipse conducts business on a much broader scale, marketing the Eclipse 500 to interested customers all over the country and the world by participating in national and international air shows. In addition, Eclipse has suppliers throughout the United States and Canada, but none in New Mexico. (D.I. 35 at 4) Finally, it is clear that discovery will be conducted at locations convenient to the parties and their employees. The only event that will take place in Delaware is trial. Eclipse has not identified any potential witnesses who would be unwilling or unable to appear for trial in Delaware. In sum, the private factors do not support Eclipse's motion to transfer.

In considering the public interest factors under *Jumara*, the parties have taken significant steps to further the instant litigation in the District Court of Delaware. Eclipse answered its complaint and filed the motion at bar, as well as a motion to dismiss or stay pending arbitration. Transfer of venue to New Mexico will delay the litigation and the docket congestion of the two jurisdictions does not dramatically differ. Lastly, Delaware has an interest in litigation regarding companies incorporated within its jurisdiction.

On balance, the court finds that the public and private interest factors favor maintaining venue in the District of Delaware. Accordingly, Eclipse's motion to transfer these proceedings to the District of New Mexico is denied.

## VI. MOTION TO STRIKE "FOR ATTORNEYS' EYES ONLY" DESIGNATION

### A. Standard of Review

■ Courts in this jurisdiction have a liberal discovery policy, permitting full disclosure of information except in situations where compelling circumstances warrant protection of the information. The Third Circuit has recognized several factors that may be considered in evaluating whether good cause exists for a protective order. *Glenmede Trust Company v. Thompson*, 56 F.3d 476, 483 (3d Cir.1995). These include: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate or an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is sought over information important to public health and safety; (5) whether the sharing of information between litigants will promote fairness and efficiency; (6) whether the party benefiting from the confidentiality order is a public entity or official; and (7) whether the case involves issues important to the public. *Id.*

■ In the situation where the parties cannot agree to a protective order and a party is asked to produce information it believes to be confidential, it can designate the documents "For Attorneys' Eyes Only", thus limiting the exposure of those documents to the members and employees of the litigating counsel. D. Del. LR 26.2.

### B. Discussion

■ Eclipse labeled the brief and appendix supporting its motion to dismiss or stay the present action and opposing Aircraft Controls' motion for expedited discovery with the designation "For Attorneys' Eyes Only" pursuant to D. Del. LR 26.2. Aircraft Controls presently moves to strike the designation on the grounds that it only applies to materials produced in discovery. Aircraft Controls also claims that it would be greatly prejudiced by its outside counsel's inability to

**590**

discuss Eclipse's brief and supporting appendix with it and its in house counsel. For the reasons stated below, Aircraft Controls' motion to strike the "For Attorneys' Eyes Only" designation is granted.

The "For Attorneys' Eyes Only" designation is properly invoked during discovery. The rule is found under the heading "Depositions and Discovery" and it applies when a party is asked to produce any documents it deems confidential. The rule serves as a means of protecting information, not arguments. If a protective order cannot be agreed upon by the parties, the disclosure of such information is limited to members and employees of counsel solely for litigating the case.

Since discovery has not yet been initiated, Aircraft Controls' motion to strike the "For Attorneys' Eyes Only" designation from Eclipse's brief and accompanying appendix is granted.

## VII. CONCLUSION

For the reasons stated above, the court grants Eclipse's motion to stay the proceedings pending arbitration. The court denies Aircraft Controls' motion to expedite discovery and Eclipse's motion to transfer these proceedings to the District of New Mexico. Lastly, Aircraft Controls' motion to strike the "For Attorneys' Eyes Only" designation from the defendant's brief and appendix is granted. An appropriate order shall issue.