**SPENCELEY OFFICE EQUIPMENT, Plaintiff**
**v.**
**RICOH LATIN AMERICA, INCORPORATED, and RICOH**
**CORPORATION, Defendants**

Civil No. 2005-152

District Court of the Virgin Islands

Division of St. Thomas and St. John

February 28, 2007

JUSTIN K. HOLCOMBE, ESQ., St. Thomas, U.S.V.I., *For Plaintiff.*

PAULA D. NORKAITIS, ESQ., St. Thomas, U.S.V.I., *For Defendants.*

GOMEZ, *Chief Judge*

## Memorandum Opinion

(February 28, 2007)

Before the Court is Ricoh Latin America, Incorporated, and Ricoh Corporation (collectively "Ricoh")'s motion to dismiss Spenceley Office Equipment ("Spenceley")'s complaint for lack of subject matter jurisdiction.

## I. FACTS

Spenceley and Ricoh sell office supplies. In 1986, they entered into an agreement that granted Spenceley the right to distribute Ricoh's office products in the Virgin Islands.

In 1995, Ricoh established a wholly owned subsidiary company called Savin Corporation ("Savin"). Savin markets a product line that is similar to Ricoh brand products.

In April, 2002, Spenceley and Ricoh entered into a distributorship agreement (the "Distributorship Agreement"). The Distributorship Agreement defines Spenceley and Ricoh's relationship as vendor and vendee. It appoints Spenceley as Ricoh's "non-exclusive distributor" of Ricoh products in the United States Virgin Islands, and provides terms for placing orders and shipments, determining prices and structuring payments. The Distributorship Agreement also includes an arbitration clause:

> DISTRIBUTOR and RICOH agree that all questions, controversies, or claims arising in connection with this Agreement which are not

settled by negotiation shall be determined by arbitration in Miami, Florida, U.S.A. or Montevideo, Uruguay (at the sole option of the party initiating the question, controversy or claim) in accordance with, and by a panel of three (3) arbitrators appointed under, the rules of of arbitration and conciliation of the International Chamber of Commerce. Any award and determination of such panel of arbitrators shall be final, binding, and conclusive on both parties.

(Distributorship Agreement § 19.)

In 2003, Spenceley learned that another business in the Virgin Islands, the Office Supply Store, also known as Business World ("Business World"), was selling Savin products. Spenceley subsequently contacted Ricoh regarding Business World's distributorship of Savin products, alleging that it violated an agreement to make Spenceley the exclusive distributor of Ricoh products in the Virgin Islands. Ricoh told Spenceley it would address Spenceley's concerns.

On August 5, 2005, Spenceley requested arbitration from the International Chamber of Commerce (the "ICC"), claiming that Ricoh had violated its agreement with Spenceley by granting Business World a Savin distributorship. Spenceley claims that it received a letter from the ICC on August 18, 2005, in which the ICC demanded an advance payment of $40,500 within 30 days. Ricoh filed a timely response to Spenceley's arbitration claim.

On September 23, 2005, Spenceley filed a three-count complaint against Ricoh in this Court (the "Complaint"). Spenceley alleges that Ricoh breached a contract and engaged in unfair methods of competition in violation of the Virgin Islands Franchise Act ("VIFA"). *See* V.I. CODE ANN. tit. 12A, § 130 *et seq.* (2006).

Four days later, Spenceley wrote to the ICC and requested the withdrawal of its earlier arbitration request. Ricoh opposed the requested withdrawal. The ICC denied Spenceley's request.

Ricoh filed the instant motion, arguing that the Court should dismiss Spenceley's complaint for lack of subject matter jurisdiction and order the dispute into arbitration pursuant to the Federal Arbitration Act ("FAA"). Spenceley opposes the motion on grounds that arbitration would be prohibitively expensive. Spenceley estimates that it would need to pay the ICC at least $84,837.50 to proceed with arbitration.

## II. ANALYSIS

At its core, Ricoh's argument for dismissal is driven by the contention that an arbitration clause precludes consideration of Spenceley's claims. Ricoh argues that this Court is without jurisdiction over Spenceley's claim because Spenceley's claim is the subject of an arbitration clause. However, Ricoh's motion is "not jurisdictional as [it raises] a defense to the merits of the action". *Liberty Mut. Fire Ins. Co. v. Yoder*, 112 Fed. Appx. 826, 828 (3d Cir. 2004) (unpublished). While the jurisdictional basis cited by Ricoh is misplaced, the Complaint may be dismissed for other reasons. *See Spinetti v. Serv. Corp. Intn'l*, 240 F. Supp. 2d 350, 352 (E.D. Pa. 2001), *aff'd*, 324 F.3d 212 (3d Cir. 2003).

Where, a dispute is covered by an arbitration clause, this Court may dismiss an action that involves that dispute. *See Alejandro v. L.S. Holding, Inc.*, 310 F. Supp. 2d 745, 45 V.I. 583 (D.V.I. 2004) (dismissing a case with prejudice in favor of arbitration). Indeed, the Court may dismiss the action if (1) the parties entered an arbitration agreement, and (2) the dispute at the center of that action is covered by that agreement. *See First Liberty Inv. Group v. Nicholsberg*, 145 F.3d 647, 650, 653 (3d Cir. 1998) (noting the presumption in favor of arbitration).

### A. Existence of an Arbitration Agreement

Both parties entered into the Distributorship Agreement. That agreement requires the arbitration of "all questions, controversies, or claims arising in connection with it." (Agreement § 19). Accordingly, the Court finds that Spenceley and Ricoh entered an arbitration agreement.

### B. The Scope of the Arbitration Clause

The Court must next determine whether Spenceley's claims fall within the scope of the arbitration clause: *See, e.g., Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003) ("[When the] allegations underlying the claims 'touch matters' covered by [a contract's arbitration clause], then those claims must be arbitrated, whatever legal labels attach to them.")

Spenceley has only alleged two causes of action against Ricoh. In Count I, Spenceley asserts a breach of contract against Ricoh. Spenceley alleges that by allowing Business World to acquire a Savin

Distributorship, Ricoh violated its agreement with Spenceley. Spenceley further alleges that even though the express language of the Distributorship Agreement says Spenceley is a non-exclusive distributor of Ricoh products, "this boilerplate language does not reflect the understanding and actual relationship" between the parties. (Compl. ¶ 37).

In Count II, Spenceley asserts that Ricoh violated the VIFA by engaging in "unfair methods of competition" when it allowed Business World to distribute Savin products (Compl. ¶ 42).

Each of Spenceley's claims arise in connection with the Distributorship Agreement. Those claims fall squarely within the scope of the arbitration clause.

Because Spenceley agreed to arbitrate disputes regarding its distributorship with Ricoh and because the dispute at the center of Spenceley's cause of action is within the scope of the agreement, Spenceley's claims are arbitrable. Even so, Spenceley argues that arbitration costs are so high that Spenceley would be unable to arbitrate its claims against Ricoh.

 To avoid arbitration on this basis, a plaintiff must show (1) that the costs of arbitration are likely to be significantly higher than litigation costs, and (2) that the plaintiff is unable to pay high costs of arbitration. *See Blair v. Scott Specialty Gases*, 283. F.3d 595, 607 (3d Cir. 2002); *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000); *see also Spinetti*, 324 F.3d at 217 (holding that an arbitration clause was unenforceable where the plaintiff presented evidence of her salary and the expected costs of arbitration). Only after this showing can the Court determine that the cost differential between arbitration and litigation is so substantial as to deter claims to arbitrators. *See Blair*, 283 F.3d at 609 (citing *Bradford v. Rockwell Semiconductor Sys. Inc.*, 238 F.3d 549, 556 (4th Cir. 2001)).

Spenceley asserts that it must provide half of the total arbitration costs, estimated between $84,000 and $97,000. Spenceley obtained these figures from a "cost calculator" on the ICC website. (Opp. to Mot. Dismiss, Pi. Ex. A). Yet, Spenceley has not submitted anything to explain what numbers it used to generate this calculation, or how the figures presented relate to the pending arbitration. Even if the figures from the "cost calculator," reflect half of the arbitration costs, as Spenceley asserts, it is not clear that Spenceley is required to pay half those costs. Neither the Agreement's arbitration provision nor the ICC

rules require an equal cost-split. *See* Distributorship Agreement § 19.1; *see also* International Chamber of Commerce, RULES OF ARBITRATION, pub. 808, arts. 30-31 (2001).

■ Even assuming arguendo that Spenceley would be required to pay $97,000, and that litigation would be substantially less expensive than arbitration, Spenceley will not succeed in avoiding arbitration. Significantly, Spenceley failed to demonstrate an inability to pay the cost of arbitration.[1]

## III. CONCLUSION

Given the absence of any disputed material fact, Ricoh's motion will be granted. An appropriate order follows.

---

[1] At best, Spenceley has restated something that seems axiomatic: that costs have a negative impact on a balance sheet. *See* Letter from David J. O'Connell, P1. Supp. Br., Ex. B. (stating that a $100,000 expenditure would have "a severe negative impact to the financial health of [Spenceley].") This statement is insufficient to satisfy Spenceley's burden.