**INNOVATIVE COMMUNICATIONS CORPORATION, Plaintiff**
**vs.**
**VIRGIN ISLANDS WATER AND POWER AUTHORITY, Defendants**

Civil No. 670/2006
Superior Court of the Virgin Islands
Division of St. Thomas and St. John
September 28, 2007

RACHELLE M. SHOCKLEE, ESQ., ANDREW C. SIMPSON, ESQ., The Law Offices of Andrew C. Simpson, St. Croix, V.I., *Attorneys for the Plaintiff*.

DENISE RHYMER, ESQ., Deputy General Counsel, Virgin Islands Water and Power Authority, St. Thomas, V.I., *Attorney for the Defendant.*

KENDALL, *Judge*

## MEMORANDUM OPINION

(September 28, 2007)

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss," Plaintiff's Opposition, Defendant's Reply and its "Supplemental Motion to Dismiss." For the foregoing reasons, this matter will be dismissed.

### I. Factual and Procedural Background.

The Virgin Islands Water and Power Authority [WAPA] is an autonomous government entity that uses utility poles to distribute electricity to residents of the Virgin Islands throughout the Territory. Innovative Communications Corporation [ICC] is a private corporation that provides services including telecommunications and cable television in the Virgin Islands using utility poles. These two entities have signed a Joint Use Agreement ["Agreement"] which permits them to share utility poles to install and maintain their respective cables.[1]

The dispute in this case stems from another matter captioned *Stacy Wynter v. Innovative, et al.,* Super. Ct. CV. No. 453/2003. The Plaintiff in that case crashed into a telephone pole and sued both parties in this matter for violating their duty to install the pole at a fixed distance from the road. Plaintiff in this matter alleges that Defendant failed to indemnify it or otherwise defend that matter in spite of knowing that it owned the pole in question. Plaintiff herein sues Defendant for Breach of Contract for failing to indemnify it in *Wynter* [Count I], Breach of Contract for failing to maintain its utility poles in compliance with applicable law [Count II], and Breach of the Duty of Good Faith for failing to act in good faith in *Wynter* [Count III]. Plaintiff seeks to recover Attorney's fees and other costs incurred in its defense in the *Wynter* matter along with any other appropriate relief.

---

[1] *See, e.g.,* Pl's Exh. 4 [Interim Agreement dated March 12, 1998].

## II. Motion to Dismiss and Supplemental Motion to Dismiss.

Defendant contends that this matter should be dismissed for lack of subject matter jurisdiction because of a mandatory applicable arbitration clause in the parties' lease agreements. Defendant contends that the resolution of Plaintiff's Complaint requires interpretation and application of the Agreement which governs their rights and obligations in sharing utility poles in St. Thomas. Thus, according to Defendant, this matter falls squarely within the provisions of Article XXIV ["arbitration provision"] of the Agreement. Article XXIV of the Agreement sets forth a binding resolution process applicable to any dispute stemming from the "interpretation or application of the articles."[2]

Plaintiff's Opposition to the "Motion to Dismiss" is improperly before the Court because Plaintiff's Counsel was not licensed to practice law in this jurisdiction when he filed the Opposition.[3] Although the Court is entitled to deem both "Motions to Dismiss" conceded and need not address the Opposition, the Court will nevertheless address the legal contentions it raises in the interest of justice. Plaintiff contends that the arbitration provision is inapplicable because a dispute over indemnification does not require interpretation or application of the Agreement. Additionally, application of the arbitration clause in this instance is contrary to public policy since Plaintiff would be subjected to additional costs of arbitration even though Defendant blatantly violated its obligations in *Wynter* for a lengthy period of time.

In Reply, Defendant disputes Plaintiff's claims that it is entitled to indemnification. Since the dispute can only be resolved by reference to the Agreement's provisions, Defendant asserts that interpretation of the Agreement is necessary and this matter should be arbitrated.

The "Supplemental Motion to Dismiss" contends that in addition to the Court's lack of subject matter jurisdiction, this matter should be dismissed because: 1) Plaintiff has no right to contribution since any agreement that would entitle it to such contribution has expired, 2) Plaintiff violated its duty to maintain the confidentiality of statements made during the Mediation process by publishing these statements in its Complaint, and 3)

---

[2] *Supra*, fn. 1.

[3] *See Angela Mills v. Vitelco*, ST-04-CV-300, Record of Proceedings dated April 17, 2007 and Order dated April 19, 2007.

Plaintiff's failure to seek indemnity from the *Wynter* Plaintiff precludes recovery in this case.

## III. DISCUSSION

### a. Standard for Granting a Motion to Dismiss.

██ As a preliminary matter, it is the law of the Virgin Islands that a "Motion to Dismiss" for failure to invoke an applicable arbitration clause should be granted pursuant to FED. R. CIV. P. 12(b)(6) rather than FED. R. CIV. P. 12(b)(1). *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45 n. 1 (3d Cir. 1991). The applicability of an arbitration clause is a legal defense to the proceeding rather than a jurisdictional limitation. *Id.* Although the Court can nevertheless issue a ruling on this Motion to Dismiss by treating it as a Motion pursuant to FED. R. CIV. P. 12(b)(6), such Motions should be filed in accordance with local law. *See id.*

The purpose of a "Motion to Dismiss" pursuant to FED. R. CIV. P. 12(b)(6) is to test the sufficiency of the Complaint against preliminary defenses. *See* 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1349, at 56-57 (3d ed. 2004). It is established that a Court may not "dismiss a Complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *see also Environmental Ass'n v. Dep't of Planning*, 44 V.I. 218, 224 (Terr. Ct. 2002). The Court should accept all reasonable inferences drawn from the allegations in the Complaint as true, but it need not accept "legal conclusions either alleged or inferred from the facts." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *see also Environmental Ass'n*, 44 V.I. at 224.

### b. Whether the arbitration provision is applicable in this instance.

Arbitration clauses are contractual obligations whose validity and application are governed by the Federal Arbitration Act [FAA]. The FAA states that

> A written provision in any contract evidencing a transaction *involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable and en-

forceable save upon such grounds as exist at law or in equity for the revocation of the contract.

*See* Title 9 U.S.C. § 2 (1947).

 Congress's use of the phrase "involving commerce" is extremely significant because the statute is based on Congress's plenary power to regulate interstate commerce, rendering the statute applicable to actions to enforce arbitration clauses in both state and federal courts. *Southland Corp. v. Keating*, 465 U.S. 1, 10-15, 104 S. Ct. 852, 859-65, 79 L. Ed. 2d 1 (1984). The Superior Court is a state Court for purposes of this statute and the statute, coterminous with the interstate commerce clause, is broadly applicable to any transaction with an interstate nexus. *Government of the Virgin Islands v. United Industrial Workers, N.A.*, 40 V.I. 489, 494, 169 F.3d 172, 176 (3d Cir. 1999) (citing *Harris v. Boreham*, 233 F.2d 110, 113-14, 3 V.I. 565 (3d Cir. 1956)).

In *United Industrial Workers,* the Court of Appeals applied the FAA to a contract between the Union and the Virgin Islands Department of Justice because the international character of the Union and the Department of Justice's involvement in matters spanning multiple states created a nexus with interstate commerce, even though the matter could have been construed as a local transaction. *United Industrial Workers*, 40 V.I. at 495-96, 169 F.3d at 176-77.

 Similarly, even though this incident did not strictly occur in interstate commerce, Plaintiff's international character is sufficient to create the necessary nexus to interstate commerce for the FAA to apply. The Court takes judicial notice that Plaintiff engages in business in multiple countries in the Caribbean basin and that it is incorporated in the state of Delaware. As an interstate actor, ICC's involvement in this transaction is sufficient to render the FAA applicable.

 The United States Supreme Court has interpreted the statute by formulating a policy to assign the resolution of narrow gateway "questions of arbitrability," such as the applicability of an arbitration clause in a given case, to the Court while reserving other challenges to the arbitrator in accordance with the parties' intent. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84, 123 S. Ct. 588, 591-92, 154 L. Ed. 2d 491. A two-step process determines if a claim is subject to arbitration. *First Liberty Inv. Group v. Nicholsberg*, 145 F.3d 647, 650-53 (3d Cir. 1998); *see also Spenceley Office Equipment v. Ricoh Latin America, Inc.*,

48 V.I. 848 (D.V.I. 2007). The first step is to examine the validity of the arbitration agreement and whether it is binding upon the parties in question. *Id.* If the agreement is valid, the Court must then determine whether the dispute falls within the scope of the arbitration provision. *Id.* In accordance with Congress' policy to reverse judicial hostility towards arbitration and to liberally find coverage, doubts regarding the scope of arbitration should be resolved in favor of arbitration. *First Liberty*, 145 F.3d at 652-53.

(1) Whether a valid arbitration agreement exists.

In this case, the two parties voluntarily entered into an arbitration agreement and neither of them challenges its validity. Thus, there is no dispute regarding the existence of an arbitration agreement between the two parties.

(2) Whether this matter is within the scope of the arbitration provision.

██ ██ In determining whether a dispute lie within the scope of the arbitration provision, the Court should ignore the "legal label" attached to it and focus on whether the allegations raise matters touching the contract's arbitration clause. *Spenceley*, 48 V.I. at 851 (citing *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003)). Every claim in this case relates to the parties' underlying contractual relationship since Plaintiff alleges that Defendant is in Breach of Contract or performed "in bad faith." The arbitration provision's broad terms cover any dispute that requires "interpretation and application" of the Agreement. The parties' differing contentions regarding whether Defendant owes Plaintiff a duty to maintain the utility poles, the applicability of the indemnification clause and failure to act in good faith require interpretation and application of the contract since the Agreement governs their duties to each other. Accordingly, Plaintiff's argument that this matter lies outside the scope of the arbitration clause is unpersuasive.

██ With respect to Plaintiff's contention that applying the arbitration clause in this case would violate public policy because of its expense, a party may only avoid arbitration because of its expense in narrow circumstances when: (1) arbitration costs are likely to be significantly higher than litigation costs, and (2) the plaintiff is unable to pay the high costs of arbitration. *Spenceley*, 48 V.I. at 852 (citing *Blair v. Scott Specialty Glasses*, 283 F.3d 595, 607 (3d Cir. 2002)). Plaintiff has offered no evidence to establish either of these conditions.

■ Moreover, Plaintiff's contention that Defendant should not be permitted to invoke the arbitration clause due to the lapse of time is a matter within the purview of the arbitrator. As contended by Defendant, forum-specific procedural questions such as "time limits" and "estoppel" are not gateway issues that the Court should decide. *Howsam*, 537 U.S. at 84, 123 S. Ct. at 592. Furthermore, there is no manifest injustice in requiring a party to submit to arbitration, which is simply an alternative form of dispute resolution and does not compromise a party's substantive rights. *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 272 (3d Cir. 2004) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 3354-55, 87 L. Ed. 2d 444 (1985)).

### c. Whether this matter should be dismissed because Plaintiff's claims erroneously rely upon an expired agreement.

Defendant further urges the Court to dismiss this matter because Plaintiff relies upon an expired agreement to bring this Complaint. Defendant contends that the current Agreement between them releases them from any liability for damages incurred as a result of their joint use of the poles and Plaintiff is relying, instead, on an agreement that expired on or about December 1, 1984. Inasmuch as this contention would require the construction of these contracts and the parties concede that the arbitration clause is valid, this issue should be dealt with by the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46, 126 S. Ct. 1204, 1209, 163 L. Ed. 2d 1038 (2006).

### CONCLUSION

In light of the foregoing, the "Motion to Dismiss" will be granted. An appropriate Order is attached.